**TAYLOR W. FOX, P.C.**
Attorney for Defendant
AZ State Bar No. 019780
Two N. Central Avenue, Ste. 735
Phoenix, AZ  85004
Tel.:  (602) 443-2220
Facsimile:  (602) 443-2221

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RANSOM MARION CARTER III,<br><br>Defendant | No. CR-08-00814-002-PHX-DGC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

NOW COMES the Defendant, by and through undersigned counsel, and respectfully submits this Memorandum for consideration regarding sentencing in this matter.

Respectfully submitted this 12th day of March, 2012.

s/ Taylor W. Fox
Taylor W. Fox

# **MEMORANDUM**

## I.   LAW

### A.   Federal Statutes Governing Sentencing

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C.  §3661.  Congress has set forth several considerations for a court to include in rendering an appropriate sentence.  They are:

1)  The nature and circumstances of the offense;

2) the history and characteristics of the defendant;

3)  the need for the sentence imposed to:

    i) reflect the seriousness of the offense;

    ii) promote respect for the law;

    iii) provide just punishment for the offense;

    iv) afford adequate deterrence to criminal conduct;

    v) protect the public from further crimes of the defendant;

    vi) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4) the kinds of sentences available;

5) the applicable sentencing guidelines issued by the Sentencing

Commission pursuant to section 994(a)(1) of title 28, United States Code;

6) any pertinent policy statement issued by the Sentencing Commission;

7) the need to avoid unwarranted sentencing disparities;

8) the need to provide restitution to any victims.

18 U.S.C. §3553(a).  That same statute provides that the court shall, in considering these factors, impose a sentence that is "***sufficient, but not greater than necessary to comply with the purposes***" set forth in paragraphs 1 through 8 above.  *Id* (emphasis supplied); *see also U.S. v. Yopp,* 453 F.3d 770, 774 (6th Cir. 2006) ("Many times we have emphasized that a district court's mandate is to 'impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth it [3553(a)(2)(1)]'") .  "In making this determination, the court may not presume that the guideline sentence is the correct one." *U.S. v. Diaz,* 720 F. Supp.2d 1039, 1040 (E.D. Wisc., 2010) (*citing Nelson v. United States*, 555 U.S. 350) (2009)).  The court is also free to reject any guideline on policy grounds, particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfill its "characteristic institutional role" of basing the range on study, expertise, empirical data, or national experience.  *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent

determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007). The court must then explain the chosen sentence in order to promote the perception of fair sentencing. *Id*. at 50.

**B.    The U.S. Sentencing Guidelines and their Application in the Post-*Booker* Sentencing Landscape**

Under the authority of the Sentencing Reform Act of 1984 (Title II of the Comprehensive Crime Control Act of 1984), the United States Sentencing Commission created the United States Sentencing Guidelines in order to provide for " the development of guidelines that will further the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation". U.S.S.G. §1A1.2 ("Statutory Mission").  Until several years ago a district court was required (absent a factual basis to warrant an upward or downward departure) to sentence a defendant convicted of a federal offense to a sentencing range set forth by the United States Sentencing Guidelines ("Guidelines").  18 U.S.C. §3553(b)(1).  That changed in 2005, when the U.S. Supreme Court invalidated the "mandatory" language of that portion of §3553, holding that it was incompatible with the Sixth Amendment right to a jury trial determination of any fact that

enhanced a sentence.  *United States v. Booker*, 543 U.S. 220, 248-49, 259 (2005).

However, the Supreme Court upheld the Guidelines themselves, holding that as long as they were advisory and not mandatory they did not need to be struck down as unconstitutional.  *See id.* at 264 ("[T]he [Federal Guidelines] without its 'mandatory' provision and related language remains consistent with Congress' initial and basic sentencing intent").  The Court noted that the Guidelines, although now advisory, continued to further the Congressional goal of achieving "'honesty', 'uniformity', and 'proportionality' in sentencing".  *Id.*  The Court stated that "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  *Id.*

Therefore, under the current sentencing scheme a district court is not bound by the Guidelines, but can instead depart from the recommended Guidelines range for a particular offense.  The district court must make the advisory Guidelines range "the starting point and the initial benchmark" for their decisions.  *U.S. v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007); *U.S. v. Carty*, 520 F.3d 984, 992 (9th Cir.2008) (*quoting Gall, supra*).  "While district courts are not required to impose a sentence within the Guidelines…they must 'give serious consideration to the extent of any departure from the Guidelines,' and they must then 'explain [the] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case

with sufficient justifications.'"  *Autery*, *supra*.  While the Guidelines must be considered by the sentencing judge, they are only factor of several under 18 U.S.C. §3553(a) for that court to assess in rendering sentence, and may not be given any more or less weight than any of the other listed factors.  *Id.*

## II.   SENTENCING CONSIDERATIONS

### A.    Nature and Circumstances of the Offense

During approximately 2005 or 2006 several individuals began collaborating on a criminal conspiracy, the object of which was to obtain money by electronically filing fraudulent federal tax returns using the identities and social security numbers of deceased individuals.  The returns all falsely claimed refunds in various amounts.  Certain "sham" bank accounts were then set up by conspirators and listed by other conspirators who were drafting the fraudulent tax returns as the accounts to which the U.S. Department of Treasury was to send the tax refund checks.

Mr. Carter's role was limited to opening one bank account, as well as to (when directed to do so) withdraw the funds and send the money to other co-conspirators.  In April 2007 Mr. Carter opened up an account with Compass Bank. In May 2007 he was asked by a co-conspirator to withdraw approximately $25,000

and send it on to another member of the conspiracy.  He withdrew the funds via the use of two cashier's checks.  The account ceased in early June 2007.  "CI-1", a government informant who participated in the conspiracy, acknowledged that the receipt of funds from the bank account set up by Mr. Carter constituted a successful "test run" of the scheme.

Mr. Carter was, by design, kept from direct contact with the primary member of the conspiracy.  He was unaware of the scope of the conspiracy in terms of the ultimate amount of money fraudulently claimed in the numerous tax returns submitted through other bank accounts than the Compass Bank account he had set up.  He did not participate in the accumulation of social security numbers to use in the fraudulent tax returns.  He did not assist in drafting the tax returns. He did not communicate directly with co-defendant Rigmaiden (and, until the court proceedings in this matter, had never seen him).  After withdrawing the money from Compass Bank and sending it on to other members of the conspiracy Mr. Carter did not engage in additional overt acts in furtherance of the criminal objectives of the conspiracy.

Prior to this incident Mr. Carter had never been convicted of a felony offense.  He became involved in the conspiracy at the request of a friend.  Mr. Carter owed this friend approximately $17,000.  He agreed to open the bank account and withdraw the funds in order to repay the debt he owed to his friend.

**B.      History and Characteristics of the Defendant**

Mr. Carter is forty-five years old.  He has two children under the age of eighteen and with whom he maintains a parental relationship.  He is a veteran of the Armed Services, having served in the U.S. military from 1984 to 1989.  He has no prior felony convictions.  He has no known fraud-related convictions.

**C.      Providing Adequate Deterrence to Criminal Conduct**

Mr. Carter has never served a term of imprisonment in an adult correctional facility greater than that which he has already served during his pretrial incarceration in this case.  He previous sentences on misdemeanor convictions involved sentences of one or two days of time actually served.  In rendering a sentence sufficient but not greater than necessary to comply with the purposes set out in 18 U.S.C. 3553(a), courts have considered a defendant's lack of prior sentences and the more severe impact that a first-time prison sentence would presumably have on that category of defendant.  *See, e.g., U.S. v. Baker,* 445 F.3d 987, 992 (7th Cir. 2006) (court affirms below-Guidelines sentence in child porn distribution case, finding significant "the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned.  Consideration of this factor is consistent with §3553's directive that the sentence reflects the need for "just punishment,"…and "adequate

deterrence,…"citations omitted)); *U.S. v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wisc. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend"); *U.S. v. Willis*, 479 F.Supp.2d 927, 937 (E.D. Wisc. 2007) (in drug case in which Guidelines range was 121 to 151 months but statutory maximum was 60 months, sentence of one year and one day sufficient in part because sentence "provided a substantial punishment for someone like defendant, who had never before been to jail and who engaged in no violence or dealing herself.").

    **D.**    **The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

An eight-month prison sentence, followed by a term of supervised release, would reflect the seriousness of the offense and promote respect for the law without imposing an excessive sentence.  Mr. Carter has already served almost a full calendar year of incarceration in this case.  Additionally, his sentence will require repayment of restitution in the amount of $24,500—a not insignificant sum for someone who is currently enrolled full-time in school while working part-time at a pizza restaurant.  Therefore, Mr. Carter's ultimate sentence is already guaranteed to have incurred both incarceration (greater than any he had previously experienced) and a monetary punishment, in the form of restitution payments.

**E.      The Need to Protect the Public**

A defendant is expected, while on Pretrial Services Release, to abide
by the terms and conditions of release.  However, a defendant sometimes reflects
pretrial release conduct that surpasses the minimum requirements of the terms and
conditions of that release.  In this sense, Mr. Carter's conduct over the past eleven
months that he has been out of custody surpasses those mandatory minimum terms
of release.  He has continued his educational goal of completing his college degree.
Prior to his arrest Mr. Carter had some post-secondary school education, but not
enough to obtain a degree.  He is currently enrolled in community college courses
for that purpose.  His compliance of the terms themselves has also been exemplary:
he is working-part time at a restaurant; he has maintained weekly contact with his
attorney; and he has tested negative on all drug tests he has been asked to submit.
Collectively, this conduct does, given the length of time on which he has been on
release, provide some indication of the adequacy that a threat of imprisonment (as
opposed to imprisonment itself) would serve to ensure that Mr. Carter continue to
engage in law-abiding conduct in all respects while out in the community.  The
need to protect the public, then, would seem to be adequately satisfied given both
Mr. Carter's limited understanding of, and role in, a sophisticated tax fraud
scheme.

III.   **CONCLUSION**

WHEREFORE, for the reasons set forth above Mr. Carter respectfully requests a sentence of no more than eight months in the Bureau of Prisons, to be followed by a term of supervised release.

Respectfully submitted this 12th day of March, 2012.

s/  Taylor W. Fox
Taylor W. Fox

Copy of the foregoing mailed, e-mailed, faxed or hand
delivered this 12th day of March, 2012, to:

The Honorable David G. Campbell
U.S. District Court Judge
District of Arizona
401 W. Washington
Phoenix, AZ 85003

Fred Battista
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central, Suite 1200
Phoenix, Arizona  85004-4408

Lisa Miller
U.S. Probation Officer
401 W. Washington
Phoenix, AZ 85003