

1  DENNIS K. BURKE
   United States Attorney
2  District of Arizona

3  FREDERICK A. BATTISTA
   Maryland State Bar Member
4  PETER S. SEXTON
   Arizona State Bar No. 011089
5  JAMES R. KNAPP
   Arizona State Bar No. 021166
6  Assistant U.S. Attorneys
   Two Renaissance Square
7  40 North First Avenue, Suite 1200
   Phoenix, Arizona 85004
8  Telephone: (602) 514-7500
   Fred.Battista@usdoj.gov
9  Peter.Sexton@usdoj.gov
   James.Knapp2@usdoj.gov
10

11           UNITED STATES DISTRICT COURT

12              DISTRICT OF ARIZONA

13  United States of America,

14              Plaintiff,                    CR-08-0814-002-PHX-DGC

15      v.                                    **PLEA AGREEMENT**

16  Ransom Marion Carter, III,

17              Defendant.

18

19      Plaintiff, United States of America, and the defendant, RANSOM MARION CARTER,

20  III, hereby agree to dispose of this matter on the following terms and conditions:

21

22  **1.   PLEA**

23      The defendant will plead guilty to Count 1 of the Superseding Indictment which charges

24  defendant with a violation of 18 U.S.C. §§ 371 & 2, Conspiracy, a Class D felony offense; and

25  Count 2, of the Superseding Indictment which charges defendant with a violation of 18 U.S.C.

26  §§ 1343 & 2, Wire Fraud, a Class C felony offense.  Defendant further agrees to admit the

27  forfeiture allegation contained in the Superseding Indictment.

28

SCANNED

**2.**     <u>**MAXIMUM PENALTIES**</u>

       a.      A violation of 18 U.S.C. § 371, is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of five (5) years, or both, and a term of supervised release of three (3) years. A violation of 18 U.S.C. § 1343, is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of twenty (20) years, or both, and a term of supervised release of three (3) years. A maximum term of probation is five years.

       b.      Because defendant has pled guilty to multiple counts, defendant faces a maximum statutory fine of up to $500,000.00, or either twice the gross pecuniary gain derived by defendant from these offenses or twice the pecuniary loss suffered by another person from these offenses, whichever sum is greater, and a maximum statutory term of imprisonment of up to twenty-five years, or both fine and imprisonment. All terms of supervised release or probation would run concurrently. Defendant understands that while these are the maximum penalties provided for by law, the Court will consult the advisory Sentencing Guidelines prior to sentencing, which generally recommend lesser penalties. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

           (1)      make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

           (2)      pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

           (3)      serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

           (4)      pay upon conviction a $100.00 special assessment for each felony count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A) for a total of $200.00.

       c.      The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3. AGREEMENTS REGARDING SENTENCING**

    a.    <u>Recommendation.</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend a sentencing of imprisonment at the low end of the advisory Sentencing Guideline range determined by the Court at the time of sentencing.

    b.    <u>Non-Binding Estimate of Applicable Sentencing Guidelines</u>. The United States **estimates** that the following Advisory Sentencing Guidelines will apply in this case:

        I.    U.S.S.G. § 2B1.1(a)(1) - Base Offense Level **7** - Wire Fraud.

        II.    U.S.S.G. § 2B1.1(b)(1)(G) - Loss Amount **+12** - Loss of over $200,000 - Known Intended Loss of $337,334 (Based on a total of 209 fraudulent returns filed with the IRS)

        III.    U.S.S.G. § 2B1.1(b)(2) - Number of Victims **+0** - The Sole victim is the United States (All related fraudulent claims were filed in the names of deceased persons)

        IV.    U.S.S.G. § 2B1.1(b)(9)(C) - Sophisticated Means **+2**.

        v.    U.S.S.G. § 3B1.2(b) - Minor Role -**2**.

        VI.    U.S.S.G. § 3E1.1(b) - Acceptance of Responsibility -**3**.

        VII.    Total Adjusted Offense Level **16**.

        VIII.    Estimated Criminal History Category **I**.

        IX.    Estimated advisory Sentencing Guideline Range - 21 to 27 months.

Defendant is free to argue that this Advisory Sentencing Guideline calculation overstates the nature of his conduct in this case.

    c.    <u>Non-Binding Recommendations.</u> Defendant understands that recommendations are not binding on the Court. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

    d.    <u>Restitution.</u> Pursuant to 18 U.S.C. § 3663 and/or 3663A, defendant agrees to make restitution to the United States in the amount of $24,500.00 (the amount withdrawn and lost to the United States as set forth in the factual basis of this agreement). This restitution order shall include restitution, if ordered, for dismissed counts and uncharged conduct.

    e.    <u>Assets.</u> The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet

1  any other party to) sell, hide, waste, spend, or transfer any such assets or property before
2  sentencing, without the prior approval of the United States (provided, however, that no prior
3  approval will be required for routine, day-to-day expenditures).

4       f.      Acceptance of Responsibility. If the defendant makes full and complete disclosure
5  to the U.S. Probation Office of the circumstances surrounding the defendant's commission of
6  the offense, and if the defendant demonstrates an acceptance of responsibility for this offense
7  up to and including the time of sentencing, the United States will recommend a two-level
8  reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).
9  If the defendant has an offense level of 16 or more, the United States will recommend an
10  additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to
11  U.S.S.G. § 3E1.1(b).

12

13  **4.      STIPULATIONS REGARDING SENTENCING**

14       a.      Restitution.  Pursuant to 18 U.S.C. § 3663 and/or 3663A, defendant expressly
15  agrees to make restitution to the United States in the amount of $24,500.00 (the amount
16  withdrawn and lost to the United States as set forth in the factual basis of this agreement).  This
17  restitution order shall include restitution, if ordered, for dismissed counts and uncharged
18  conduct.

19       b.      Community Service.  Defendant shall be ordered to perform 50 hours of
20  community service in lieu of a fine while under the Court's supervision.

21       c.      Assets.  The defendant shall make a full accounting of all assets in which the
22  defendant has any legal or equitable interest.  The defendant shall not (and shall not aid or abet
23  any other party to) sell, hide, waste, spend, or transfer any such assets or property before
24  sentencing, without the prior approval of the United States (provided, however, that no prior
25  approval will be required for routine, day-to-day expenditures).

26

27

28

4

**5.**     **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

      a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall move to dismiss Counts 3, 37 and 38 of the Superseding Indictment after defendant has been sentenced on Counts 1 and 2 of the Superseding Indictment.

      b.     The United States Attorney's Office for the District of Arizona shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the conduct alleged in the factual basis of this agreement, the conduct alleged in the Superseding Indictment and the related case discovery released to defendant to date. This agreement expressly excludes crimes of violence as defined in 18 U.S.C. § 924(c)(3). No such offenses are known to the United States as of the date of this agreement.

      c.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**6.**     **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

      If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

      If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

7.    **WAIVER OF DEFENSES AND APPEAL RIGHTS**

Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the Superseding Indictment or Information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and 2255.  The defendant acknowledges that if the Court has sentenced the defendant according to the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

8.    **DISCLOSURE OF INFORMATION**

a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

(2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

6

9.     **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

10.     **ELEMENTS OF OFFENSES**

**Conspiracy to Commit False Claims Upon the United States, Aggravated Identity Theft, Unauthorized Access of a Computer With the Intent to Defraud, Mail Fraud or Wire Fraud - Count 1 of the Superseding Indictment**

<u>First</u>, commencing on a date unknown but at least as early as on or about April 27, 2007, and continuing through on or about June 3, 2007, there was an agreement between two or more persons to commit the offense of Wire Fraud as alleged in the Superseding Indictment;

<u>Second</u>, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

<u>Third</u>, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy during the period of on or about April 27, 2007 through on or about June 3, 2007; and

<u>Fourth</u>, at least part of the offense was committed within the District of Arizona, that is, the State of Arizona.

Defendant has been advised that a conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that

they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  A jury would be instructed that they would have to find that there was a plan to commit at least one of the crimes alleged in the charging document as an object of the conspiracy with all of them agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy.  Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

**Wire Fraud - Count 2 of the Superseding Indictment and an Object of the Conspiracy**

First, on or about April 27, 2007, and continuing through on or about June 3, 2007, defendant made up a scheme or plan for obtaining money or property by making false promises or statements, with the jury unanimously agreeing on at least one particular false promise or statement that was made with respect to Count 2;

Second, the defendant knew that the promises or statements were false;

Third, the promises or statements were material, that is they would reasonably influence a person to part with money or property;

Fourth, the defendant acted with the intent to defraud;

Fifth, the defendant used, or caused to be used, wire, radio, or television communication in interstate or foreign commerce, to carry out or attempt to carry out an essential part of the scheme; and

Sixth, at least part of the offense was committed within the District of Arizona, that is, the State of Arizona.

<u>**Aiding and Abetting Wire Fraud - Count 2 of the Superseding Indictment**</u>
<u>**An Object of the Conspiracy**</u>

A defendant may be found guilty of Wire Fraud, even if the defendant personally did not commit the act or acts constituting each crime but aided and abetted in each crime's commission. To prove a defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt:

<u>First</u>, each subject offense of Wire Fraud as alleged in Count 2 of the Superseding Indictment was committed by someone;

<u>Second</u>, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of the subject offense of Wire Fraud; and

<u>Third</u>, the defendant acted before the crime was completed. It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the offense of Wire Fraud.

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

**11.   FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt. With respect to Count 1 of the Superseding Indictment and all times material to the charges arising within the District of Arizona:

<u>**Introduction**</u>

1.      Co-defendant DANIEL DAVID RIGMAIDEN fraudulently prepared and electronically filed false claims with the United States in the form of false income tax returns filed with the United States Internal Revenue Service (IRS), defendant RANSOM MARION

1  CARTER, III worked with fellow co-conspirators known and unknown to the United States who

2  aided co-defendant DANIEL DAVID RIGMAIDEN in the collection of income tax refunds

3  generated from the fraudulent claims and returns via numerous means including automatic teller

4  machine withdrawals through the use of pre-paid debit cards and withdrawals from bank

5  accounts opened in the names of shell accounting and tax preparation entities.

6         2.      In recent years, the IRS has encouraged taxpayers to prepare and electronically file

7  (e-file) their federal income taxes.  Taxpayers can submit their returns via e-file through

8  authorized IRS e-file providers.  Each authorized IRS e-file provider is assigned one or more

9  Electronic Filing Identification Numbers (EFIN), which the IRS uses to identify and monitor

10  e-file provider activity.  The IRS Electronic Tax Administration (ETA) administers the e-file

11  program.

12         3.      The Free File program is a free federal tax preparation and electronic filing

13  program for eligible taxpayers developed through a partnership between the IRS and the Free

14  File Alliance LLC, a group of private sector tax software companies. Free File allows taxpayers

15  with an Adjusted Gross Income of $54,000.00 or less in 2007 to e-file their federal tax returns

16  for free.

17         4.      Many e-file providers offer home use web-based tax preparation software

18  applications.  The application allows the end user to self-prepare a tax return on their home

19  computer and electronically transmit the tax return via the Internet by means of a personal

20  computer and modem.  After the e-file provider receives the information from the end user, the

21  e-file provider electronically files the tax return with the IRS, thereby completing the electronic

22  filing process.  In order for the end user to connect and transmit an e-filed return over the

23  Internet, the end user must have access to the Internet via an Internet Service Provider (ISP).

24         5.      Any taxpayer who e-files may request that any income tax refund owed be sent

25  directly into a bank account or other financial account, such as a pre-paid debit card, via an

26  electronic funds transfer, by providing a routing transmit number and a bank account number

27  for the subject account on the incoming electronically filed tax return.

28

6.    Once an eligible income tax return is e-filed with an IRS Service Center, such as the Service Centers located in Fresno, California, and Kansas City, Kansas, the returns are processed. Upon processing, if an income tax refund is owed, the Service Center will instruct a Financial Center, such as the Austin Financial Center, Financial Management Services, Austin, Texas, to pay the income tax refund to the eligible taxpayer, and if requested, the payment will be made via an electronic funds transfer into a bank account or other financial account, such as a pre-paid debit card, designated by the taxpayer on the original return.

## COUNT ONE

### Conspiracy

7.    Beginning at a time unknown to the United States, but at least as early as on or about January 1, 2005, and continuing through on or about August 3, 2008, in the District of Arizona and elsewhere, co-defendant DANIEL DAVID RIGMAIDEN, defendant RANSOM MARION CARTER, III, and others known and unknown to the United States, knowingly and willfully agreed and conspired with each other and others, known and unknown to the United States, to commit the following offenses against the United States:

(1)    Title 18, United States Code, Section 287 (False Claims Upon the United States);

(2)    Title 18, United States Code, Section 1028A (Aggravated Identity Theft);

(3)    Title 18, United States Code, Sections 1030(a)(4) and 1030(c)(3)(A) (Unauthorized Access of a Computer With the Intent to Defraud);

(4)    Title 18, United States Code, Section 1341 (Mail Fraud); and

(5)    Title 18, United States Code, Section 1343 (Wire Fraud).

### Overt Acts

8.    In furtherance of the conspiracy, and to effect the objects of the conspiracy, co-defendant DANIEL DAVID RIGMAIDEN, defendant RANSOM MARION CARTER, III, and others known and unknown to the United States, committed and caused to be committed, the following overt acts, among others:

9.    Commencing on a date unknown by the United States, but at least by April 27, 2007, and continuing through on or about June 3, 2007, co-defendant DANIEL DAVID

11

1   RIGMAIDEN, and others known and unknown to the United States, collected personal

2   information of deceased individuals, including their names and social security numbers, for the

3   purpose of fraudulently preparing and fraudulently filing with the IRS, through electronic means,

4   false claims upon the United States via false income tax returns for the purpose of fraudulently

5   obtaining income tax refunds.

6          10.    During the period beginning on or about April 27, 2007, and continuing through

7   on or about June 3, 2007, defendant RANSOM MARION CARTER, III opened and maintained

8   Compass Bank business checking account No. XXXXXX9673, in Phoenix, Arizona, and a shell

9   accounting and tax preparation business entity, in the State of Arizona, on behalf of co-defendant

10  DANIEL DAVID RIGMAIDEN, and others known and unknown to the United States, for the

11  purpose of receiving fraudulently obtained income tax refunds from the IRS via electronic funds

12  transfers.

13         11.    During the period beginning on or about May 11, 2007, and continuing through

14  on or about June 3, 2007, co-defendant DANIEL DAVID RIGMAIDEN electronically filed and

15  caused to be electronically filed, approximately 209 false claims upon the United States via

16  fraudulent income tax returns filed with the IRS and thereby fraudulently sought the payment

17  of approximately $339,298.00 in income tax refunds on behalf of deceased individuals, via

18  electronic funds transfers, into Compass Bank business checking account No. XXXXXX9673,

19  in Phoenix, Arizona.

20         12.    During the period beginning on or about May 11, 2007, and continuing through

21  on or about May 25, 2007, co-defendant DANIEL DAVID RIGMAIDEN, defendant RANSOM

22  MARION CARTER, III, and others known and unknown to the United States, caused Financial

23  Management Services, with financial centers located in Austin, Texas, Kansas City, Kansas,

24  Philadelphia, Pennsylvania, and San Francisco, California, to transfer, via electronic funds

25  transfers, approximately $129,393.00 in fraudulently generated income tax refunds into Compass

26  Bank Business Checking Account No. XXXXXX9673, in Phoenix, Arizona.

27         13.    On or about May 11, 2007, co-defendant DANIEL DAVID RIGMAIDEN, in

28  furtherance of a knowingly and willfully devised scheme and artifice to defraud the United

1   States, and to obtain money by means of materially false and fraudulent pretenses and

2   representations, electronically filed a false claim with the United States which claimed that

3   Luther G. Clay, deceased in 1983, Social Security Account No. XXX-XX-2128, earned income

4   through wages in 2006, paid income taxes on the wages in 2006, and was owed an income tax

5   refund in the amount of $2,401.00, and requested that the false claim be paid via an electronic

6   funds transfer into Compass Bank business checking account No. XXXXXX9673, in Phoenix,

7   Arizona.

8          14.    On or about May 11, 2007, co-defendant DANIEL DAVID RIGMAIDEN, in

9   furtherance of a knowingly and willfully devised scheme and artifice to defraud the United

10  States, and to obtain money by means of materially false and fraudulent pretenses and

11  representations, electronically filed a false claim with the United States which claimed that

12  Josephine L. Cowles, deceased in 1983, Social Security Account No. XXX-XX-3450, earned

13  income through wages in 2006, paid income taxes on the wages in 2006, and was owed an

14  income tax refund in the amount of $2,379.00, and requested that the false claim be paid via an

15  electronic funds transfer into Compass Bank business checking account No. XXXXXX9673, in

16  Phoenix, Arizona.

17         15.    On or about May 26, 2007, defendant RANSOM MARION CARTER, III,

18  withdrew $24,500 from Compass Bank business checking account No. XXXXXX9673, in

19  Phoenix, Arizona.  These funds were proceeds from the Conspiracy and Wire Fraud scheme.

20  These funds were never recovered by the United States.

21         This conduct was in violation of Title 18, United States Code, Sections 371 and 2.

22                              **COUNTS TWO AND THREE**

23                                    **Wire Fraud**

24         16.    Beginning on or about April 27, 2007, and continuing through on or about June

25  3, 2007, in the District of Arizona and elsewhere, co-defendant DANIEL DAVID RIGMAIDEN,

26  defendant RANSOM MARION CARTER, III, and others known and unknown to the United

27  States, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud

28

1  and to obtain money by means of materially false and fraudulent pretenses, representations and

2  promises.

3       17.    On or about the dates listed below, in the District of Arizona and elsewhere, for

4  the purpose of executing said scheme and artifice to defraud and to obtain money by means of

5  materially false and fraudulent pretenses, representations and promises, co-defendant DANIEL

6  DAVID RIGMAIDEN, defendant RANSOM MARION CARTER, III, along with others known

7  and unknown to the United States, did knowingly transmit or cause to be transmitted, by means

8  of wire and radio communications in interstate commerce, certain writings, pictures, signals and

9  sounds (i.e. electronic funds transfers), from the State of Texas to the State of Arizona as set

10  forth in the chart below, each such instance being a separate Count of the Superseding

11  Indictment:

12

| Ct | Date of Funds Transfer – On or About | Deceased Taxpayer and Year of Death – On or About (SSN) [Refund Amount Claimed and Paid] | Funds Originator (Funds Recipient) [Type of Transaction] | Materially False Representations (Defendant(s)) |
|---|---|---|---|---|
| 2 | 05/25/07 | Luther G. Clay – 1983 (XXX-XX-2128) [$2,401.00] | Austin Financial Center, Financial Management Services, Austin, Texas (Compass Bank, Account No. XXXXXX9673 - Phoenix, Arizona) [Electronic Funds Transfer] | The deceased taxpayer earned income through wages in 2006, paid income taxes on the wages in 2006, and was owed an income tax refund in the amount claimed. Return containing the materially false representations filed on or about May 11, 2007. (Rigmaiden and Carter) |

| Ct | Date of Funds Transfer – On or About | Deceased Taxpayer and Year of Death – On or About (SSN) [Refund Amount Claimed and Paid] | Funds Originator (Funds Recipient) [Type of Transaction] | Materially False Representations (Defendant(s)) |
|---|---|---|---|---|
| 3 | 05/25/07 | Josephine L. Cowles – 1983 (XXX-XX-3450) [$2,379.00] | Austin Financial Center, Financial Management Services, Austin, Texas (Compass Bank, Account No. XXXXXX9673 - Phoenix, Arizona) [Electronic Funds Transfer] | The deceased taxpayer earned income through wages in 2006, paid income taxes on the wages in 2006, and was owed an income tax refund in the amount claimed.  Return containing the materially false representations filed on or about May 11, 2007. (Rigmaiden and Carter) |

This conduct was in violation of Title 18, United States Code, Sections 1343 and 2.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to them.

I have discussed the case and my constitutional and other rights, including venue, with my attorney.  I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I have been advised of my right to have any offense tried in the district in which the offense is alleged to have occurred, in this case the United States District Court, Western District of Washington, at Seattle, and knowingly and voluntarily agree to waive this right to have these charges tried in the district where the offenses are alleged to have occurred and consent to have these charges included within this case pending within the District of Arizona.

1        I agree to enter my guilty plea as indicated above on the terms and conditions set forth
2   in this agreement.

3        I have been advised by my attorney of the nature of the charges to which I am entering
4   my guilty plea.  I have further been advised by my attorney of the nature and range of the
5   possible sentence and that my ultimate sentence shall be determined by the Court after
6   consideration of the advisory Sentencing Guidelines.

7        My guilty plea is not the result of force, threats, assurances, or promises, other than the
8   promises contained in this agreement. I voluntarily agree to the provisions of this agreement and
9   I agree to be bound according to its provisions.

10       I understand that if I am granted probation or placed on supervised release by the Court,
11  the terms and conditions of such probation/supervised release are subject to modification at any
12  time. I further understand that if I violate any of the conditions of my probation/supervised
13  release, my probation/supervised release may be revoked and upon such revocation,
14  notwithstanding any other provision of this agreement, I may be required to serve a term of
15  imprisonment or my sentence otherwise may be altered.

16       This written plea agreement, and any written addenda filed as attachments to this plea
17  agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any
18  such agreements exist, shall be recorded in a separate document and may be filed with the Court
19  under seal; accordingly, additional agreements, if any, may not be in the public record.

20       I further agree that promises, including any predictions as to the Sentencing Guideline
21  range or to any Sentencing Guideline factors that will apply, made by anyone (including my
22  attorney) that are not contained within this written plea agreement, are null and void and have
23  no force and effect.

24       I am satisfied that my defense attorney has represented me in a competent manner.

25       I fully understand the terms and conditions of this plea agreement.  I am not now using
26  or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

27

28

would impair my ability to fully understand the terms and conditions of this plea agreement.

15 APR 11

_____
Date

R. Carter

_____
RANSOM MARION CARTER, III
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

4/15/2011

_____
Date

_____
TAYLOR FOX
Attorney for Defendant

/
/
/
/
/
/
/

17

1
2
3
4

## APPROVAL OF THE UNITED STATES

    I have reviewed this matter and the plea agreement.  I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

5
6
7
8
9
10

DENNIS K. BURKE
United States Attorney
District of Arizona

4/15/11
Date

FREDERICK A. BATTISTA
PETER SEXTON
JAMES R. KNAPP
Assistant U.S. Attorneys

11
12

## ACCEPTANCE BY THE COURT

13
14
15

4/2/12
Date

DAVID G. CAMPBELL
United States District Judge

16
17
18
19
20
21
22
23
24
25
26
27
28