1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7              **UNITED STATES DISTRICT COURT**

8                **DISTRICT OF ARIZONA**

9

10  United States of America,              No. CR08-814-PHX-DGC

11        Plaintiff,                        CLARIFICATION OF DEFENDANT'S
                                            ANSWER IN RESPONSE TO COURT'S
12  v.                                      QUESTION ASKED AT MARCH 28, 2013
                                            HEARING
13  Daniel David Rigmaiden, et al.,

14        Defendant.

15

16        Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits

17  *Clarification Of Defendant's Answer In Response To Court's Question Asked At March 28,*

18  *2013 Hearing.*[1]  At the March 28, 2013 motions hearing, the Court asked the following:

19

20        [THE DEFENDANT:]   As far as the government equating the search
          protocol violations to a no-knock violation, with no-knock warrants or when
21        the government doesn't have a no-knock warrant and actually conducts a
          search without knocking, the Supreme Court found that that's not a "but for"
          unattenuated cause of obtaining the evidence.  But in this case, the violations
22

23  1.     The defendant requests that the Court consider the defendant's clarification
    considering **(1)** while answering the Court's question at the March 28, 2013 hearing, the
24  defendant lost his train of thought after realizing he did not have a cite for the case he was
    referencing, **(2)** had the defendant been permitted to sleep before the hearing... like everyone
25  else, he would have been able to complete his thought [*see* Myers, David G., Ph.D.,
    *Exploring Psychology, Sixth Edition In Modules* (New York, NY: Worth Publishers, 2005), p.
26  214 ("When sleepy frontal lobes confront an unexpected situation, misfortune often
    results.")], **(3)** the government was permitted to submit supplementary arguments and
27  evidence two days before the hearing (Dkt. #986) and additional evidence after the hearing
    (Dkt. #992), and **(4)** this clarification—which contains no new arguments—will be helpful
28  considering the legal technicalities relating to the Court's question have little discussion in
    case law and little discussion in the briefs submitted thus far.

1  of the warrants actually resulted in them obtaining the evidence, so that case isn't on point with what they're claiming.

2  …

3  THE COURT:   Do you contend that the government's exceeding the time periods in the Northern District of California protocol is a "but for"
4  unattenuated cause of their finding evidence?

5  THE DEFENDANT:   Yes.

6  THE COURT:   How so if they could have obtained exactly the same evidence in their possession merely by extending the warrant?  They had the
7  evidence in their possession.

8  THE DEFENDANT:   Well, it has to be -- in order for my reasonable expectation of privacy to continue to not exist, it has -- the evidence they have
9  has to remain in the uninterrupted possession of law enforcement.  So once the
10  30 days is extinguished, according to the warrant, their legitimate possession was interrupted, and my reasonable expectation of privacy was restored.  So in
11  that sense, the warrant establishes -- the terms of the warrant establishes my reasonable expectation of privacy....

12  *March 28, 2013 Motion Hearing Transcrip*t, p. No. 93-94.

13  To clarify, any evidence obtained after the 30-day deadlines was beyond the scope of

14  the warrants and in violation of the defendant's reasonable expectation of privacy.  While the

15  government had *physical* possession of the entirety of the data, it did not have *legitimate*

16  possession[2] once the 30-day deadlines had expired and any search conducted after that

17  period was beyond the scope of the warrants.  Because the scope violations fall under the

18  Fourth Amendment's particularity clause, unattenuated but-for causality need not be analyzed

19  in the context of reasonableness vis-a-vis a technical violation.  In other words, the scope

20  violations, without more, render the search unreasonable and the evidence must be

21  suppressed.  *See*, *e.g.*, United States v. Penn, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (*en banc*)

22  ("A warranted search is unreasonable if it exceeds in scope or intensity the terms of the

23  warrant.").

24  However, even if analyzed in the context of a no-knock style technical violation, the

25  search was unreasonable, unattenuated but-for causality is satisfied, and suppression is

26  _____

27  2.   *See* Walter v. United States, 447 U.S. 649 (1980) (FBI screening of films was a Fourth Amendment search even while agents gained lawful access to the film reels); Hell's Angels Motorcycle Corp. v. Mckinley, 360 F.3d 930, 934 (9th Cir. 2004) (government may conduct
28  subsequent searches of a seized item if "it remains in the legitimate **uninterrupted** possession of the police[.]" (emphasis added)).

1    merited.  The seized data would not have come to light but-for the 30-day search window

2    violations and no attenuation can be realized.  The government had two options under the

3    warrants after expiration of the 30-day deadlines: (1) stop searching for data, or (2) obtain an

4    extension of time to continue the search.  Because the challenged violations involve the

5    government's failure to stop searching after 30 days, determining but-for causality is done by

6    examining the search as if the government had, in fact, stopped searching.  Under this

7    examination, no evidence would have been obtained by the government after the first 30

8    days and, as a result, the necessary but-for causality is satisfied.[3]  Having established but-

9    for causality, attenuation is determined by examining the two factors discussed in *Hudson*:

10   (1) evidence relation to violation, and (2) suppression remedy relation to purpose.[4]  Under

11   this examination, there is no attenuation of the evidence considering (1) the causal

12   connection between the evidence and violation is not too remote,[5] and (2) suppression of

13   the evidence bears a relation to the purposes of which the 30-day search windows were to

14   serve, *i.e.*, limiting lengthy human-eye exposure to private data.[6]

15        In an attempt to sidestep *Hudson*, the government justifies its 30-day search window

16   violations by relying on <u>Richards v. Wisconsin</u>, 520 U.S. 385, 395-96 (1997), a pre-*Hudson*

17   knock-and-announce violation case.  In *Richards*, the Supreme Court said that "the

18   reasonableness of the officers' decision[] [to commit a technical violation] must be evaluated

19   as of the time [the violation occurred]."  *Id*.  The *Richards* decision was based on the

20   reasoning that a magistrate cannot "anticipate[] in every particular the circumstances that

21   3.    "Our cases show that but-for causality is only a necessary, not a sufficient, condition
     for suppression."  <u>Hudson v. Michigan</u>, 547 U.S. 586, 592 (2006).

22   4.    "Attenuation can occur, of course, when the causal connection is remote.  Attenuation
23   also occurs when, even given a direct causal connection, the interest protected by the
     constitutional guarantee that has been violated would not be served by suppression of the
24   evidence obtained."  *Id.* at 593 (internal citation omitted).

25   5.    Just like in *Thompson*, because the violations "were all executed in the course of
     enabling the executing agents to conduct their search and seizure..., the unreasonableness
26   cannot be separated from the search and subsequent seizure."  <u>United States v. Thompson</u>,
     667 F. Supp. 2d 758, 767 (S.D. Ohio 2009).

27   6.    *Compare* <u>United States v. Ankey</u>, 502 F.3d 829, 836 (9th Cir. 2007) ("The Supreme
     Court made it clear that, because the knock-and-announce rule protects interests that 'have
28   nothing to do with the seizure of... evidence, the exclusionary rule is inapplicable' to knock-
     and-announce violations." (*quoting* <u>Hudson</u>, 547 U.S. at 594)).

1   would confront the officers when they [conduct a search]." *Id.* In other words, in order to

2   justify a technical violation, the government must show how exigent circumstances

3   prevented it from first seeking authorization from a magistrate. For example, in pre-*Hudson*

4   United States v. Granville, 222 F.3d 1214 (9th Cir. 2000), the Ninth Circuit suppressed

5   evidence for a knock-and-announce violation considering law enforcement's "failure to

6   comply was not justified by exigent circumstances." *Id.* at 1220 (applying *Richards*). In the

7   present case, the government has identified no exigent circumstances justifying its 30-day

8   search window violations or its failure to request extensions of time from a magistrate over

9   the course of a 3+ year long unauthorized search period.

10      Turning back to *Hudson*, the government's mere unexercised option to seek an

11   extension of time does not act to attenuate the evidence from the noted violations. As a

12   comparative example, had the court in *Hudson* found that the knock-and-announce violation

13   **was** an unattenuated but-for cause of obtaining the evidence, the government would have

14   been hard pressed to claim that the evidence was admissible simply because agents *could*

15   *have* gone back to the magistrate at any time—either before or after the violation—to have

16   the no-knock authority added to the warrant's terms. In the present case, one can only

17   speculate as to whether the government *would have* applied for an extension of time in some

18   parallel universe, or whether the extension *would have* been for an additional week, an

19   additional 3+ years, or even been granted at all. Furthermore, one can only speculate as to

20   whether the issuing magistrate *would have* imposed additional restrictions when issuing the

21   extension or whether the government *would have* complied with those restrictions or

22   engaged in additional Fourth Amendment violations. In sum, once the necessary but-for

23   causality is established, the government's mere unexercised option to properly conduct a

24   search is not an avenue to attenuation.

25      In response to the Court's specific question, the government having the evidence in its

26   possession is not a means to obtain now what was illegally obtained then, or a means to

27   show attenuation vis-a-vis the original violations. For example, if unattenuated but-for

28   causality had been found in *Hudson*, the government would have been hard pressed to claim

that the finding was extraneous simply because the evidence was already in the government's possession (*e.g.*, in a government storage locker), which could then be searched and seized using a new warrant.  Furthermore, the warrants at issue in the present case required destruction of all *out-of-scope* data after 60 days.  Had the government complied with those terms, there would have been no evidence to search after 60 days—let alone 3+ years.

\* \* \* \* \*

This filing was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this filing on his behalf using the ECF system.

LRCrim 12.2(a) requires the following text in motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon."

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1    Respectfully Submitted:

2

3                                          PHILP SEPLOW, Shadow Counsel, on
                                           behalf of DANIEL DAVID RIGMAIDEN,
4                                          Pro Se Defendant:

5

6                                          s/ Philip Seplow
                                           Philip Seplow
7                                          Shadow Counsel for Defendant.

8                           CERTIFICATE OF SERVICE

9

         I hereby certify that on:              I caused the attached document to be
10

11   electronically transmitted to the Clerk's Office using the ECF system for filing and
     transmittal of a Notice of Electronic Filing to the following ECF registrants:

12

13   Taylor W. Fox, PC
     Counsel for defendant Ransom Carter
14   2 North Central Ave., Suite 735
     Phoenix, AZ 85004
15

16   Frederick A. Battista
     Assistant United States Attorney
17   Two Renaissance Square
     40 North Central Ave., Suite 1200
18   Phoenix, AZ 85004

19

20   Peter S. Sexton
     Assistant United States Attorney
21   Two Renaissance Square
     40 North Central Ave., Suite 1200
22   Phoenix, AZ 85004

23

24   James R. Knapp
     Assistant United States Attorney
     Two Renaissance Square
25   40 North Central Ave., Suite 1200
     Phoenix, AZ 85004
26

27

28   By: s/ Daniel Colmerauer
     (Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

CLARIFICATION OF DEFENDANT'S ANSWER IN RESPONSE TO COURT'S QUESTION ASKED AT MARCH 28, 2013 HEARING
CR08-814-PHX-DGC