<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";
BY: Daniel David Rigmaiden

I, Daniel David Rigmaiden, declare[1] the following:

1.      In its order at Dkt. #1009, the Court fallaciously asserted that *(a)* "It is also true, however, that Defendant was prepared to abandon the apartment on a moment's notice."[2] *(b)* "Given Defendant's preparations to flee and his admission that he would have done so had he learned of the government's investigation, it could be argued that Defendant had already formed an intent to abandon his aircard, computer, and apartment."[3] and *(c)* "Defendant argues that he would have fled and never been found if the warrant had been served..."[4] This section of my declaration addresses the above claims made by the Court which are unsupported by the record.

2.      First, I had no intent and made no preparations to abandon my apartment at all. I never made any claims of that nature and the Court's assertions have no basis in fact and are unsupported by the record. In my original declaration on the record at Dkt. #824-2, I made clear that I would **move** after packing up my belongings and cleaning the apartment. *See id.*, p. 4, ¶ 14. This was in accordance with my lease. I also made clear that I would move within **one day**, not in a "moment's notice." *See id.* To clarify, I made the one day calculation based on the fact that (1) my studio apartment was only 489 $ft^2$ and (2) I would need extra time to find transportation to move my belongings considering I had no car (or other road vehicle) and no

---

1.      This declaration is being submitted under the protections of *Simmons*. *See* <u>Simmons v. United States,</u> 390 U.S. 377, 394 (1968) (Holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."). I object to the government attempting to introduce this declaration as evidence at trial.
2.      Dkt. #1009, p. 7, ln. 23-24.
3.      *Id.*, p. 8, ln. 7-10.
4.      *Id.*, p. 34, ln. 19-20.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";
BY: Daniel David Rigmaiden

---

driver license.

3.      Second, I never made an admission that I would have fled "had [][I] learned of the government's investigation." The Court's assertion has no basis in fact and is unsupported by the record. In my original declaration on the record at Dkt. #824-2, I made clear that I would have **moved** within one day after packing up my belongings and cleaning my apartment *only if* I would have been served with a copy of the N.D.Cal. 08-90330MISC-RS order. *See id.*, p. 4, ¶ 14. By being served with a copy of the unconstitutional order—which contains no details of the underlying investigation—I would have *only* learned of the government violating my Fourth Amendment rights. To clarify my purpose of **moving**, I highly value my Constitutional rights and would have **moved** in order to prevent further degradation of those rights by overzealous government agents. By **moving**, I would have eliminated the poisonous fruits of the government's illegal search and seizure. This is the same remedy (*i.e.*, the suppression remedy) used by courts when seeking to **alter** government activity so that it complies with the Fourth Amendment. It was then and it is now my belief that making such a stand against overzealous government activity is every citizen's right and duty.[5]

4.      Third, I never claimed that I would have "fled and never been found." In my original declaration on the record at Dkt. #824-2, I made clear that "there would have been nothing for the government to seize and nobody for the government to arrest **during the in-person search of apartment No. 1122 on August 3, 2008**." *Id.*, p. 4, ¶ 14. By referring to "August 3, 2008," I was not referring to "never," as the Court incorrectly asserted. My point

---

5.      *See United States Declaration of Independence* (Jul. 4, 1776) ("That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to **alter**... it" (emphasis added)).

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";

BY: Daniel David Rigmaiden

---

was/is clear: had I been served with a copy of the unconstitutional N.D.Cal. 08-90330MISC-RS order, the August 3, 2008 "in-person search of apartment No. 1122 would have never produced evidence or the defendant[]"[6] because he would have "moved from apartment No. 1122 with all of his belongings before the government's execution of the N.D.Cal. 08-70460-HRL/PVT search warrant."[7]

\* \* \*

5.  In its order at Dkt. #1009, the Court fallaciously asserted that *(a)* "The government also asserted during oral argument, without contradiction from Defendant, that Defendant's rented storage unit was found to contain $70,000 in cash, a United States passport issued to Defendant in the name of Andrew Johnson (a deceased individual), and a computer with back-up information from Defendant's laptop, all apparently awaiting a quick departure."[8] and *(b)* "What's more, while living in the apartment under false pretenses, Defendant had $70,000 in cash, a false passport, and a copy of his laptop computer in a storage unit (also rented under false pretenses) ready for a quick escape."[9] This section of my declaration addresses the above claims made by the Court which are unsupported by the record.

6.  First, my purpose of maintaining a storage unit was simply for the storage of property. I did not maintain a storage unit to facilitate a quick departure in the event of law enforcement seeking to arrest me or search my home residence. The government and Court's assertions to the contrary are ludicrous and entirely contrary to fact and truth. I never

---

6.  Dkt. #900, p. 44.
7.  *Id.*
8.  Dkt. #1009, p. 8, ln. 3-7.
9.  *Id.*, p. 9-8, ln. 27-28 & 1-2.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";
BY: Daniel David Rigmaiden

---

considered using anything in the storage unit for such a purpose.

7. Second, I never agreed to the government's *assumption* that the items in the storage unit were there for a "quick departure" or "quick escape." The March 28, 2013 hearing was not an evidentiary hearing and the government presented no evidence that I was required to rebut. As shown by the hearing transcript, the government's claim made for the **first time** on March 28, 2013 was framed as an *assumption* and not a fact supported by evidence:

> I think it's a very safe **assumption** that if Mr. Rigmaiden wanted to drop out of sight and change identities, he could have done it instantaneously. We know he could have done that, because when we executed the search warrant for the storage unit, we found a facially valid U.S. passport in the name of Johnson... He had over $70,000 in cash... and, oh, by the way, a backup computer with all of his information...
>
> *March 28, 2013 Motion Hearing Transcript*, [MR. BATTISTA], p. 86-87 (emphasis added).

8. Third, while there was a single hard drive in my storage unit, the space did not contain any computer or copy of my laptop computer. Such an item is not listed on the search warrant return used to search the storage unit, *i.e.*, the return for the N.D.Cal. 08-70502-PVT warrant.

9. Fourth, not only did I have no plans for a "quick escape," I could not have made a "quick escape" considering I did not own a car (or other road vehicle) and had no driver license.

10. Fifth, I kept the storage unit records and the combination to the storage unit in my apartment—the place the Court and government fallaciously claimed I was to escape from.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";
BY: Daniel David Rigmaiden

---

There would have been no way for me to "escape" using a storage unit of which the government learned of while at my apartment and searched **less than one day later**, on August 4, 2008.

\* \* \*

11.  In its order at Dkt. #1009, the Court found that *(a)* "The rental application listed a fake California driver's license bearing a number *that belonged to a female with a different name...*"[10] *(b)* "Defendant provided a forged California driver's license in Brawner's name, along with a driver's license number *assigned to a living female.*"[11] *(c)* "Defendant rented a storage unit using the identity of Daniel Aldrich, a deceased person, with a fraudulent driver's license number *assigned to another living person.* [] Defendant... used yet *another person's driver's license number* in connection with the Stout identification..."[12] and *(d)* Note: this is only a sampling. The Court repeatedly noted how IDs that I used had driver license numbers that did not correspond to the names on the IDs. This section of my declaration clarifies that all ID numbers on all ID cards were invented at random—as I previously stated in a prior declaration[13]—and I did not know they belonged to other people.

12.  During oral arguments on March 28, 2013, the government went to lengths to count the number of identities that I allegedly used. However, the government was, at the very least, double counting considering all fake driver licenses had made-up ID numbers. The ID numbers were chosen at random and preceded by a letter "D." I already noted this practice in

---

10. Dkt. #1009, p. 5, ln. 6-8.
11. *Id.*, p. 8, ln. 27-28.
12. *Id.*, p. 9, ln. 1-6.
13. *See* Dkt. #894-1, p. 1, ¶ 2.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";
BY: Daniel David Rigmaiden

---

my prior declaration on the record at Dkt. #894-1: "The driver license number and social security number were random numbers following the established format for California ID numbers and social security numbers respectively." *Id.*, p. 1, ¶ 2. I had no idea whether the driver license ID numbers belonged to other people because they were chosen at random. In other words, while the names Steven Brawner and Andrew Johnson were once used by living people, and the name Travis Rupard used by a living person, the driver license ID numbers used on all identification cards for all names corresponded to no people at all. As far as the Court and government's counting of relevant assumed identities, there were only three.

* * * * *

13.   I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true. *See* 28 U.S.C. § 1746 ("Wherever... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn... affidavit, in writing of the person making the same [], such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration..., in writing of such person which is subscribed by him, as true under penalty of perjury, and dated..."); 18 U.S.C. § 1621 ("Whoever... in any declaration... under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both....").

## DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden had no plans for a "quick escape" or "quick departure," made no "preparations to flee," was not ready to "abandon the apartment on a moment's notice," and did not maintain a storage unit as part of an "escape plan";

BY: Daniel David Rigmaiden

---

Executed on May 15, 2013, in Florence, Arizona, United States of America.

Daniel David Rigmaiden

*/s/ Daniel Rigmaiden*

Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132