JOHN S. LEONARDO
United States Attorney
District of Arizona

FREDERICK A. BATTISTA
Maryland State Bar Member
PETER S. SEXTON
Arizona State Bar No. 011089
JAMES R. KNAPP
Arizona State Bar No. 021166
Assistant U.S. Attorneys
Two Renaissance Square
40 North First Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 514-7500
Fred.Battista@usdoj.gov
Peter.Sexton@usdoj.gov
James.Knapp2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-08-814-001-PHX-DGC |
|---|---|
| Plaintiff, | **GOVERNMENT'S MEMORANDUM RE POSSIBLE CHANGE OF PLEA AND SENTENCING SET FOR APRIL 7, 2014** |
| vs. | |
| Daniel David Rigmaiden, | **(Filed Under Seal Pending Change of Plea)** |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, recommends that the Court accept defendant's plea agreement and sentence him to time served, which is approximately five-and-a-half years of imprisonment. The United States and the Probation Office calculate that defendant's advisory Sentencing Guidelines range is a greater amount. Nevertheless, as explained below, the United States asks the Court to accept the plea agreement based in part on defendant's acceptance of responsibility and repayment of the losses associated with the subject offenses.

1    Respectfully filed this 2nd day of April, 2014.

2

3                                         JOHN S. LEONARDO

4                                         United States Attorney
                                          District of Arizona
5

6

7                                         S/ Frederick A. Battista

8                                         FREDERICK A. BATTISTA
                                          PETER SEXTON
9                                         JAMES KNAPP
10                                        Assistant U.S. Attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM

## I.     Brief Statement of Facts

a.     Overview

The investigation that led to the arrest of defendant Daniel David Rigmaiden was a joint investigation involving the Internal Revenue Service - Criminal Investigation (IRS-CI), the Federal Bureau of Investigation (FBI), and the U.S. Postal Inspection Service (USPIS).  The investigation ultimately led to defendant's arrest and the execution of search warrants in the Northern District of California.  One warrant was executed at the defendant's apartment on August 3, 2008, soon after his arrest.  The search revealed significant evidence related to a sophisticated scheme to fraudulently attempt to obtain $5.2 million in tax refunds, in the names of innocent third parties and deceased individuals.  The defendant caused the payment of approximately $1,904,321 in fraudulent refunds into accounts and debit cards controlled by him and his co-conspirators, as well as accounts controlled by undercover agents.

Up until defendant's arrest and identification through fingerprint analysis, his true identity was unknown to the investigation team.  Through the team's efforts, it was determined the defendant had operated in the United States, was involved in acquiring identity information of deceased and living individuals, including their social security numbers, and was using that information to conduct an electronic bulk tax filing scheme.

b.     Facts

In March and April 2008, the investigation team, led by three IRS-CI Special Agents, one FBI Special Agent, and one United States Postal Inspector, worked through a confidential informant in Phoenix to identify a co-conspirator in Utah (who eventually became CI-2).  (CR 873, pp. 3-6.)  In the course of the undercover investigation of CI-2 and the defendant, a number of $9,000 cash withdrawals were made from the initial undercover account in Arizona.

A key aspect of the defendant's scheme was how he collected the funds.  One of the ways the defendant sought to solve this problem was by causing the funds to be deposited into accounts opened under fictitious identities that were not traceable to him. Once the accounts were funded, the defendant and his associates would generally withdraw the funds using access cards tied to the fictitious accounts.  In the course of the undercover operation, the defendant directed CI-2 to withdraw some of the funds in Utah. This money, a total of $17,100, was retained as evidence. A portion of that evidence, $16,700, is depicted in Attachment 1.

Prior to his arrest on August 3, 2008, the defendant was captured obtaining some of these funds near his residence on April 21, 2008, in Santa Clara, California, at Mission City Federal Credit Union and Bank of the West.  (CR 873, pp. 26-27, Attachments 2 & 3.)  At this time, it was unknown whether the person in the images was the leader of the group or simply another associate.  A common element in the photos was a jacket that possibly had a monogram for the "Arcteryx" brand on the chest.  (Attachment 23.)

The investigative agents tried to determine defendant's location and identity by setting up controlled deliveries of the fraud proceeds. In the spring of 2008, the defendant agreed to accept a payment of $68,000 from the tax refunds.  In order to avoid detection, the defendant provided elaborate instructions to CI-2 via encrypted e-mails regarding how the cash was to be washed in lantern fluid, packaged, and then shipped to "Patrick Stout" at a 24-hour FedEx Kinkos in Palo Alto, California.  All of the instructions were for the purpose of avoiding detection.   The instructions were followed by the investigation team to the letter (along with recording the serial numbers of all of the $100 bills). Photos of the packaging process were provided to the defendant via an e-mail address not traceable to the defendant.  (Attachments 4-6.)  The package was shipped to the specified location on May 5, 2008 and delivered on May 6, 2008.  At approximately 5:00 a.m., on May 7, 2008, the package was picked up by a then-unknown person wearing a jacket bearing an Arcteryx logo.  (CR 873, pp. 6-8, Attachment 7.)  Defendant evaded surveillance by boarding a northbound Caltrain train at the nearby Palo Alto

1    station.   Investigators also learned that defendant used to the same FedEx Kinkos to

2    receive two shipments of gold valued at approximately $18,000.  (CR 873, pp. 8-9.)

3         Subsequent investigation of the "Patrick Stout" identity determined that it was

4    fraudulent. The "Patrick Stout" identity was backstopped by a P.O Box through the use of

5    a fake California driver's license and closed on May 31, 2008.

6         Investigators planned a second shipment of cash in order to attempt to locate and

7    identify the defendant.  After June 30, 2008, the defendant's expected share of the profits

8    from the undercover account was well over $300,000.  (CR 873, pp. 9 & 29.)  A similar

9    shipment of $352,800 was scheduled for July 30, 2008.   Defendant again provided

10   instructions for the money to be sealed in bags and shipped, this time to "Jeffery Killian"

11   (another false identity), at a different FedEx Kinkos in Palo Alto, California.

12   (Attachments 8-11.)   The package was shipped (without the cash).   Defendant never

13   attempted to collect it.

14        Investigators also analyzed the internet protocol (IP) addresses of the computers

15   used by the defendant to try to determine his location and identity.  As discussed in great

16   detail in the response to the motion to suppress (CR 873, p. 9-23), particular IP addresses

17   used in furtherance of the scheme were traced back to a Verizon Wireless broadband

18   access card account maintained by a "Travis Rupard" (another false identity).  The ESN

19   for this device (an "aircard") was 005-00717190.  This ESN was the needle in a huge

20   haystack the investigation team had been looking for.  The false identity used to maintain

21   the aircard account was backstopped by a San Jose P.O. box that was also opened using a

22   fake California driver's license.  (CR 873, p. 11-12.)

23        FBI analysis of historical cell tower contact records available from Verizon

24   Wireless allowed the investigation team to focus on an area in Santa Clara, California,

25   where the aircard appeared to have regular contact within the overlapping range of three

26   particular cell towers.  (CR 873, p. 32.)  The investigation team was able to narrow the

27   potential location of the aircard down to an area the size of four apartments within the

28   Domicilio apartment complex in Santa Clara, California.  (CR 873, p. 29-30.)

On July 17, 2008, investigators subpoenaed Domicilio for the file information related to 431 El Camino Real, Apartment 1122, Santa Clara, California, 95050. (Attachment 12.)  The subpoena revealed the apartment was currently being rented by an individual claiming to be Steven Travis Brawner.   The rental application indicated Brawner was a software engineer.   (CR 873, p. 30.)   A review of yet another fake California driver's license by the investigation team determined that number was assigned to a female with a Chino Hills, California, address.  (CR 873, p. 30.)

In order to rent the apartment, defendant was required by the rental company to provide a copy of the first page of an income tax return.  This return listed the Brawner identity and purported to show an adjusted gross income of $110,314.  (Attachment 13.) Internal records for the Internal Revenue Service were researched and revealed no tax return for 2006 was filed for Steven Travis Brawner.   Additionally, Social Security Administration records for the social security number showed that Steven Brawner died in 1997. (CR 873, pp. 30 & 36.)

In the latter part of July 2008, investigators were unable to observe any residents at the apartment through daytime and spot-check surveillance.  On July 22, 2008, at approximately 7:20 pm, a FBI Special Agent acting in an undercover capacity knocked on the door using the ruse of a fast food delivery.  No one answered the door.  (CR 873, p. 30.)

In August 2008, while the undercover package alleged to contain $352,800 sat in a FedEx Kinkos in Palo Alto, California, the investigation team simultaneously continued surveillance of the apartment and the Palo Alto location.  At this time, the investigation team had a sealed federal indictment with charges against Steven Travis Brawner, a.k.a. Travis Rupard, a.k.a. Patrick Stout; along with a sealed anytime no-knock warrant for the Brawner apartment in hand.  The investigation team did not want to enter the apartment prematurely and lose the opportunity to arrest Brawner.

On Sunday, August 3, 2008, two federal agents near the Domicilio apartments spotted defendant walking away from the complex, and noticed that he appeared to match

the photograph on the fake Brawner driver's license. Once the agents started to follow him, agents observed defendant undertake what they believed were counter-surveillance measures.  Not wishing to attempt to arrest defendant with just two federal agents, the agents flagged down two uniformed Santa Clara Police Department Officers in a marked unit.  The officers were shown the Brawner driver's license picture, agreed to assist and called for back-up.  As the law enforcement officers collectively approached defendant, he fled on foot.  In an attempt to avoid apprehension, defendant ran against traffic in a nearby street.  (CR 873, p. 33-34.)  Shortly thereafter, defendant was taken into custody and but would not identify himself.  Defendant had no identification on him, but he had a set of keys in his pocket.  Shortly thereafter, one of the keys was found to fit the front door lock of the Brawner apartment.  (CR 873, p. 34.)  Via fingerprint analysis, agents determined defendant's true identity.  (CR 873, p. 34.)  (Once defendant was advised that his true name had been determined, he used that name as the case proceeded.)

As soon as possible after the arrest, the investigation team executed their search warrant and entered the apartment.  The apartment was neat, sparse, and well organized. (Attachment 14.)  The computer equipment defendant used in furtherance of the scheme was set up in the living room of the apartment. (Attachment 15.)  The defendant's computer was a laptop he had previously purchased under the false identity of "Andrew Johnson."  (CR 873, p. 36, Attachment 16.)  The Rupard aircard was found inserted in the laptop.  A member of the investigation team, an IRS-CI computer expert, immediately set about securing and gathering information from the defendant's computer.  A hard drive with a significant amount of data related to the subject scheme was also found in the apartment.

While the defendant's computer was searched by the computer expert, other members of the team searched the apartment.  The search team found, among other things, multiple cell phones on the computer table (Attachment 18); multiple access cards on the computer table (Attachment 19); $47,100 in cash, which included multiple $100 bills from the May 5, 2008, undercover shipment (Attachment 20); 139 one ounce gold

coins, 29 1/10 ounce gold coins, and 88 one ounce silver coins (Attachment 21); 500 silver coins (Attachment 22); and two Arcteryx jackets, including the one displayed in Attachment 23.   Additional items found in the apartment included a magnetic strip reader/writer, a laminator, a camera, an image scanner, and additional items that could be used to make false identifications.  (Attachment 3 of the Plea Agreement.)

The IRS-CI computer expert's search of defendant's computer led the investigation team to a storage unit defendant had rented in San Jose, California, under the false identity of Daniel Aldrich.  A separate warrant for this location was sought and then executed.  Again, the storage unit was neat and well organized.  (Attachment 24.) Within the storage unit, the investigation team found $70,000 bound in seven $10,000 bundles (Attachment 25); 73 one ounce gold coins and 100 1/10 ounce gold coins (Attachment 26); numerous debit cards bearing multiple false identities, including George A. Miller, Edward Berners, and Patrick Stout (Attachment 27); and multiple false identifications, including fraudulent California driver's licenses in the names Andrew Glen Johnson, Daniel Clifton Aldrich, and Steven Travis Brawner, and a United States Passport issued by the State Department in the name of Andrew Glen Johnson (Attachment 28).  Additional items found in the storage units were death certificates for Andrew Glen Johnson and Steven Travis Brawner, and additional items that could be used to make false identifications or duplicate debit cards.  (Attachment 3 of the Plea Agreement.)

Further investigation of the name George A. Miller soon led the investigation team to a commercial mail receiving agency box in Sacramento, California.  (Attachment 29.) The box had been opened by the defendant under the name George Miller.  While the defendant was in custody, another warrant was executed on the box.  The box was found to contain multiple packages and letters. One of the items addressed to George Miller was found to contain two gold coins.  (Attachment 30.)

## II.  Assessment of Pertinent 18 U.S.C. § 3553(a) Factors

a.  Offense Conduct

Defendant's base offense level for the offenses of Mail and Wire Fraud is 7 pursuant to U.S.S.G. § 2B1.1(a)(1).  Probation Office Memorandum (POM) ¶ 23.  As documented in Attachment 2 of the plea agreement, defendant attempted to defraud the United States out of approximately $5,262,387 and caused the United States to release approximately $1,904,321 in tax refunds.  Of that $1,904,321, approximately $1,469,990 was recovered directly from financial institutions, including approximately $1,024,500 that had been paid into undercover accounts controlled at all times by the undercover agents. Therefore, of the approximately $1,904,321 that was released by the United States, the defendant caused an actual loss of approximately $395.416.  As a result of the seizure, forfeiture, and abandonment of all of the defendant's known significant assets as detailed in Attachment 2 of the plea agreement, including gold, silver and cash, the defendant has repaid the United States in full for the financial losses caused as a result of this case.  As noted in Attachment 2, the total amount recovered by the United States, due to the value of all of the property forfeited to the United States, is approximately $470,342.  Nevertheless, the attempted loss of $5.2 million results in an 18 offense level enhancement pursuant to Section 2B1.1(b)(1)(J).  POM ¶ 24.

Defendant's advisory Sentencing Guideline range is also enhanced due to the following additional offense characteristics.  Defendant's offenses involved the possession and use of access device making equipment (2 additional offense levels pursuant to Section 2B1.1(b)(10), POM ¶ 25); the use of sophisticated means including shell tax preparation businesses and intermediary computers, encryption and false identities to avoid detection (2 additional offense levels pursuant to Section 2B1.1(b)(9)(c), POM ¶ 26); and his role as a leader and organizer of a criminal activity that involved five or more participants (4 additional offense levels pursuant to Section 3B1.1(a), POM ¶ 28).

The subtotal of defendant's adjusted offense level is therefore 33.   POM ¶ 30. Minus 3 offense levels for acceptance of responsibility, defendant's total offense level is 30.  POM ¶¶ 31-34.

### b.  Criminal History

The defendant has been convicted in a single prior case.  POM ¶ 36.  In that case, defendant was sentenced in 1999 to probation and 180 days in jail in Monterey County, California, for four counts of Acquisition of Access Card Information.  This conviction results in the imposition of two criminal history points pursuant to U.S.S.G. § 4A.1.(b). When defendant later failed to appear in court for a hearing related to his probation, a warrant was issued.  POM ¶ 36.  The warrant remained outstanding until it was dismissed after defendant's arrest in this case.   These events result in the imposition of two additional criminal history points pursuant to U.S.S.G. § 4A.1.(d) for a total of four.  The POM reflects relatively minor additional charges in California in 1999 through 2001 but none have resulted in felony or misdemeanor convictions.  POM ¶¶ 40-43.  As a result, the defendant falls within Criminal History Category III.

### c.  Advisory Guideline Range and Impact of the Actual Sentence

A total offense level of 30 with a Criminal History Category of III results in an advisory Sentencing Guideline range of 121-151 months. POM ¶ 45.   Assuming defendant is sentenced to a term of imprisonment of time served, he will have served 68 months in a pretrial detention facility with no benefit of any consideration for good time. In general, a defendant is eligible for reductions of approximately 2 months of good time for every year he serves in custody.  A defendant who is sentenced to 121 months would generally be eligible for release after approximately 101 months (121 months less 2 months for every year in custody).   Therefore, in this case the defendant has served a sentence which is 33 months less than the low end of the advisory Guideline range (assuming good conduct throughout custody).

d.  The Defendant and the Resolution of this Case

Defendant has agreed to fully accept responsibility for his role in the subject scheme, admit to an extremely detailed factual basis, and forfeit and abandon to the United States proceeds of his crime.  In addition, the defendant has agreed to resolve all outstanding issues regarding the return or abandonment of personal property and the handling of all digital materials contained in the digital media seized during the investigation.

Defendant challenged virtually every aspect of the United States' investigation, hoping to dismiss the case or suppress the incriminating evidence.  He did so on his own, after requesting the removal of a series of attorneys and electing to represent himself.  Although he was ultimately unsuccessful in dismissing the charges or suppressing evidence, he mounted an impressive defense, especially considering that his only formal education is a high school diploma.

With respect to non-legal matters, the United States has found the defendant to be truthful in his representations in the course of any negotiations or case management issues.  In the course of this litigation, it has also become clear that defendant's intellect and energy can be devoted to lawful enterprises.  The United States believes that the defendant now wishes to significantly alter his lifestyle and become a productive and law abiding member of society.

/
/
/
/
/
/
/
/
/

## III.    Conclusion

Accordingly, the United States recommends that the Court accept the plea agreement and sentence the defendant in accordance with its terms including time served.

Respectfully lodged this 2nd day of April, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona

S/ Frederick A. Battista

FREDERICK A. BATTISTA
PETER SEXTON
JAMES KNAPP
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2014, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Philip Seplow
Shadow Counsel for Defendant Daniel David Rigmaiden

Probation Officer Jonathon Spano
U.S. Probation Office

A copy of the attached document was also mailed to:

Daniel David Rigmaiden
Agency No. 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

S/Frederick A. Battista

FREDERICK A. BATTISTA
Assistant U.S. Attorney

**Attachment 1**

ATM Pulls CI-2 was Directed to Make by the Defendant During the Undercover
Operation



**Attachment 2**

**ATM Pulls, Mission City Federal Credit Union, Santa Clara, California,
Account in the name of William A. Johnson, 4-21-08 at 9:45 PM**



**Attachment 3**

ATM Pulls, Bank of the West, Santa Clara, California,
Account in the Name of William Smith, 4-21-08 at 9:55 PM



**Attachment 4**

Preparing the $68,000 Undercover Shipment to Patrick Stout





**Attachment 5**

Packaging the $68,000 Undercover Shipment
From CI-2 to Patrick Stout





## Attachment 6

Packaging the $68,000 Undercover Shipment
From CI-2 to Patrick Stout





**Attachment 7**

The Delivery Site for the May 5, 2008, Undercover Shipment of $68,000
to Patrick Stout and the Subsequent Pickup at the Site in Menlo Park, California





**Attachment 8**

Packaging the $352,800 Undercover "Shipment" to Jeffery Killian on July 30, 2008



## Attachment 9

Packaging the $352,800 Undercover "Shipment" to Jeffery Killian





**Attachment 10**

Packaging the $352,800 Undercover "Shipment" to Jeffery Killian





**Attachment 11**

Packaging the $352,800 Undercover "Shipment" to Jeffery Killian





**Attachment 12**

The Steven Brawner Apartment
Santa Clara, California





# Attachment 13

## The Front Page of a Fraudulent Tax Return Submitted With the Steven Brawner Apartment Application



| Form **1040** | Department of the Treasury — Internal Revenue Service **U.S. Individual Income Tax Return** | **2006** | (99) | IRS Use Only — Do not write or staple in this space. |
|---|---|---|---|---|

For the year Jan 1 - Dec 31, 2006, or other tax year beginning _____, 2006, ending _____, 20___ | OMB No. 1545-0074

**Label** (See instructions.)

Your first name: Steven   MI   Last name: Brawner

Your social security number

If a joint return, spouse's first name   MI   Last name

Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions.: 182 Howard St. #506   Apartment no.

City, town or post office. If you have a foreign address, see instructions.: San Francisco   State: CA   ZIP code: 94105

You must enter your social security number(s) above. ▲

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund? (see instructions) . . . ▶ ☐ You ☐ Spouse

**Filing Status**
Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here ▶
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent; enter this child's name here ▶
5 ☐ Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a. . . . . . . . .
b ☐ Spouse . . . . . . . . . . . . . . . . . . . . . . . . .

Boxes checked on 6a and 6b . . | 1

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|

No. of children on 6c who:
● lived with you . . .
● did not live with you due to divorce or separation (see instrs) . .

If more than four dependents, see instructions.

Dependents on 6c not entered above . .

d Total number of exemptions claimed . . . . . . . . . . . . . . . . . . . . . . .

Add numbers on lines above . . ▶ | 1

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . . . . . . . | 7 | 26,951. |
| 8a | Taxable interest. Attach Schedule B if required . . . . . . . . . . . . | 8a | |
| b | Tax-exempt interest. Do not include on line 8a . . . . | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required . . . . . . . . . | 9a | |
| b | Qualified dividends (see instrs) . . . . . . . | 9b | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) . . . . | 10 | |
| 11 | Alimony received . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . . . . . . . . | 12 | 89,700. |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here . . . . . . ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . . . . | 14 | |
| 15a | IRA distributions . . . . . . | 15a | | b Taxable amount (see instrs) . . | 15b | |
| 16a | Pensions and annuities . . . | 16a | | b Taxable amount (see instrs) . . | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E . . . . | 17 | |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . . . . . . | 18 | |
| 19 | Unemployment compensation . . . . . . . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits . . . | 20a | | b Taxable amount (see instrs) . . | 20b | |
| 21 | Other income | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income . . ▶ | 22 | 116,651. |

**Adjusted Gross Income**

| 23 | Archer MSA deduction. Attach Form 8853 . . . . . . | 23 | | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ . . . . | 24 | | | |
| 25 | Health savings account deduction. Attach Form 8889 . . . | 25 | | | |
| 26 | Moving expenses. Attach Form 3903 . . . . . . . . | 26 | | | |
| 27 | One-half of self-employment tax. Attach Schedule SE . . . | 27 | 6,337. | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans . . . . . | 28 | | | |
| 29 | Self-employed health insurance deduction (see instructions) . . . . . | 29 | | | |
| 30 | Penalty on early withdrawal of savings . . . . . . . . | 30 | | | |
| 31a | Alimony paid b Recipient's SSN. . . ▶ | 31a | | | |
| 32 | IRA deduction (see instructions) . . . . . . . . . | 32 | | | |
| 33 | Student loan interest deduction (see instructions) . . . . . | 33 | | | |
| 34 | Jury duty pay you gave to your employer . . . . . . . | 34 | | | |
| 35 | Domestic production activities deduction. Attach Form 8903 . . . | 35 | | | |
| 36 | Add lines 23 - 31a and 32 - 35 . . . . . . . . . . . . . . . . . . . . | 36 | 6,337. |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income . . . . . . . . ▶ | 37 | 110,314. |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.   FDIA0112 11/27/06   Form **1040** (2006)

**Attachment 14**

The Interior of the Steven Brawner Apartment
Santa Clara, California





**Attachment 15**

The Computer Setup Within the Steven Brawner Apartment
Santa Clara, California



**Attachment 16**

The Laptop Purchased Under the Name Andrew Johnson
Found in the Steven Brawner Apartment



**Attachment 17**

The Verizon Aircard Maintained Under the Name Travis Rupard
Found in the Steven Brawner Apartment





# Attachment 18

## Multiple Cell Phones Found Near the Laptop in the Steven Brawner Apartment



## Attachment 19

Multiple Access Cards Found Near the Laptop in the
Steven Brawner Apartment





**Attachment 20**

$47,100 in Cash, Including a Portion of the $68,000 Shipment to Patrick Stout, Found in the Steven Brawner Apartment





**Attachment 21**

Gold and Silver Coins Found in the Steven Brawner Apartment Including
139 1 Ounce Gold Coins, 29 1/10 Ounce Gold Coins, and 88 1 Ounce Silver Coins





## Attachment 22

500 Silver Coins Found in the
Steven Brawner Apartment



**Attachment 23**

Arcteryx Jacket Worn During ATM Pulls Using Cards in the Names William Smith and
William A. Johnson, and During the Patrick Stout Package Pickup,
Found in the Steven Brawner Apartment





**Attachment 24**

Daniel Aldrich Storage Unit A-47
San Jose, California





## Attachment 25

$70,000 Found in 7 $10,000 Bundles in Daniel Aldrich Storage Unit A-47
San Jose, California





**Attachment 26**

73 1 Ounce Gold Coins and 100 1/10 Ounce Gold Coins Found in
Daniel Aldrich Storage Unit A-47
San Jose, California





**Attachment 27**

Debit Cards Under Numerous False Identities Including George A. Miller,
Edward L. Berner and Patrick N. Stout Found in Daniel Aldrich Storage Unit A-47
San Jose, California



**Attachment 28**

False Identifications, Including Driver's Licenses in the Names Andrew Glenn Johnson,
Daniel Clifton Aldrich and Steven Travis Brawner, and a Passport Issued by the United
States State Department in the Name Andrew Glenn Johnson,
Found in the Daniel Aldrich Storage Unit A-47
San Jose, California



**Attachment 29**

George Miller CMRA,
Sacramento, California



**Attachment 30**

Numerous Packages and Letters, Including 2 Gold Coins, Found in the
George Miller CMRA, Sacramento, California



