FILED ___ LODGED
___ RECEIVED ___ COPY

APR 7 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona

3  FREDERICK A. BATTISTA
   Maryland State Bar Member
4  PETER S. SEXTON
   Arizona State Bar No. 011089
5  JAMES R. KNAPP
   Arizona State Bar No. 021166
6  Assistant U.S. Attorneys
   Two Renaissance Square
7  40 North First Avenue, Suite 1200
   Phoenix, Arizona 85004
8  Telephone: (602) 514-7500
   Fred.Battista@usdoj.gov
9  Peter.Sexton@usdoj.gov
   James.Knapp2@usdoj.gov
10 Attorneys for Plaintiff

11            IN THE UNITED STATES DISTRICT COURT

12            FOR THE DISTRICT OF ARIZONA

13

14 United States of America,

              Plaintiff,                CR-08-0814-001-PHX-DGC

15                                      **PLEA AGREEMENT**

16       vs.                            **(Felony Offenses)**

17 Daniel David Rigmaiden,

              Defendant.

18

19

20       Plaintiff, United States of America, and pro se defendant, DANIEL DAVID

21 RIGMAIDEN, hereby agree to dispose of this matter on the following terms and

22 conditions:

23

24 **1.  PLEA**

25       The defendant will plead guilty to Count 1 of the Superseding Indictment, which

26 charges defendant with a violation of 18 U.S.C. § 371, Conspiracy, a Class D felony

27 offense; Counts 33 and 36 of the Superseding Indictment, which each charge defendant

28 with a violation of 18 U.S.C. § 1343, Wire Fraud, a Class C felony offense; and Count 74



of the Superseding Indictment, which charges defendant with a violation of 18 U.S.C. § 1341, Mail Fraud, a Class C felony offense.

## 2.    MAXIMUM PENALTIES

a.    A violation of 18 U.S.C. § 371, is punishable by a maximum fine of $250,000, a maximum term of imprisonment of five (5) years, or both, and a term of supervised release of three (3) years. Each violation of 18 U.S.C. § 1343, is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, pursuant to 18 U.S.C. § 3571(d), a maximum term of imprisonment of twenty (20) years, or both, and a period of supervised release of three (3) years. A violation of 18 U.S.C. § 1341, is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, pursuant to 18 U.S.C. § 3571(d), a maximum term of imprisonment of twenty (20) years, or both, and a period of supervised release of three (3) years. A maximum term of probation for all four (4) of these offenses is five (5) years.

b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding

that the Court may impose a term of supervised release in all other cases); and

(4)    pay a special assessment of $100 for each felony count to which the defendant pleads guilty upon conviction (here totaling $400) pursuant to 18 U.S.C. § 3013(a)(2)(A).

c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.    AGREEMENTS REGARDING SENTENCING**

a.    Stipulations Regarding Sentencing. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate and agree as follows: (1) the defendant shall be sentenced to a term of imprisonment of time served of five years for Count 1 (the statutory maximum pursuant to 18 U.S.C. § 371) and to time served for the remaining three counts (Counts 33, 36 and 74), each sentence for each count to be concurrent with the sentence for every other count with a commencement date of August 3, 2008, for all four counts; (2) the defendant shall be placed on supervised release for a term of three years; and (3) the defendant shall be ordered to perform 100 hours of community service while serving a term of supervised release in lieu of a fine.

b.    Non-Binding Recommendations.    The defendant understands that recommendations are not binding on the Court.  The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c.    Restitution. As set forth in the factual basis of this agreement, defendant unlawfully caused the United States to deposit $1,904,321.48 in various accounts in the United States during the period of January 1, 2005 through August 3, 2008. In lieu of an

- 3 -

1   order of restitution in this case, the parties stipulate pursuant to Fed. R. Crim. P.

2   11(c)(1)(C) that the defendant will abandon and forfeit to the United States the assets and

3   property listed in Attachment 1, Preliminary Order of Forfeiture and Attachment 2,

4   Fraudulent Tax Return Refund Summary.

5        d.    Additional Property.  The parties further agree that the additional property

6   listed in Attachment 3, Return and Abandonment of Property, will either: (1) be returned

7   to defendant within 10 days after his conviction in this case becomes final (or at a later

8   date if the defendant requests a later return date); or (2) all of defendant's rights and

9   interests in the property will be abandoned to the United States effective the day the

10   defendant's conviction in this case becomes final.   The property to be returned to

11   defendant is identified in the second column of Attachment 3; all other property listed in

12   Attachment 3 will be abandoned to the United States.

13        e.    The defendant wishes to waive the preparation of a Presentence

14   Investigation Report and proceed to sentencing as soon as practical after his change of

15   plea in this case. The United States has no objection to proceeding in this manner.  The

16   parties recognize that the preparation of a Presentence Investigation Report is at the

17   Court's discretion.

18        f.    Acceptance of Responsibility.  If the defendant makes full and complete

19   disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's

20   commission of the offense (if the Court orders the preparation of a Presentence

21   Investigation Report), and if the defendant demonstrates an acceptance of responsibility

22   for this offense up to and including the time of sentencing, the United States will

23   recommend a two-level reduction in the applicable Sentencing Guidelines offense level

24   pursuant to U.S.S.G.§ 3E1.1(a).  If the defendant has an offense level of 16 or more, the

25   United States will recommend an additional one-level reduction in the applicable

26   Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

27

28

4. **AGREEMENTS TO DISMISS AND NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A) and 11(c)(1)(C), the United States shall move to dismiss Counts 2 through 32, 34, 35 and 37 through 73 of the Superseding Indictment after the defendant has been sentenced on Counts 1, 33, 36 and 74 of the Superseding Indictment.

b. Stipulations Regarding Agreements Not to Prosecute. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate and agree to the terms set forth in Sections 4(c), and 4(c)(i) through 4(c)(xi) immediately below.

c. Subject to the limitations set forth in Section 4(d) immediately below, in consideration of defendant's plea to the above offenses, including his admission to the relevant conduct set forth in the factual basis of this agreement, the defendant will not be further prosecuted criminally by: (1) the United States Attorney's Office for the District of Arizona; (2) the United States Attorney's Offices for each of the other 93 judicial districts of the United States; or (3) the Criminal Division of the United States Department of Justice, for acting in any capacity (e.g., as a principal or aider and abettor) or by any means (e.g. promoting or soliciting) with respect to his involvement in any crimes between on or about January 1, 2000 to August 3, 2008, related to:

i. Fraud, including but not limited to, fraud related to: banks and financial institutions, and affecting such institutions; interstate wire communications; the mails; passports; social security identification numbers, identification numbers and documents; and the use of computers; and access devices;

ii. Theft, including but not limited to, identity theft;

iii. False claims;

iv. Computer hacking, including but not limited to, accessing a computer without authorization or exceeding authorized access; damaging a computer; causing loss; and trafficking in passwords and similar information;

v. Interception of communications;

vi.   Manufacture, possession, use, transfer, or sale of false, fraudulent, forged, or counterfeit documents, forms of identification, emblems, insignia, signatures, or names;

vii.   False statements, including but not limited to, the use of a fictitious name and any statements made by defendant while in custody to law enforcement officers, custodial officials, or custodial staff from the date of his arrest in this case to the date of this agreement;

viii.   Money laundering;

ix.   Racketeering and racketeer influenced corrupt organizations.

x.   Threatening or hoax communications within the communications with CI-2 or any other person contained in the case discovery.

xi.   Firearms offenses related to communications with CI-2 and any other person contained in the case discovery.

Except with respect to the offenses noted in Sections 4(c)(x) and (xi) of this agreement set forth immediately above, the agreements not to prosecute expressly exclude crimes of violence as defined in 18 U.S.C. § 924(c)(3). As of the date of this agreement, no such crimes of violence are known to the United States. The agreements not to prosecute also expressly exclude tax offenses under Title 26 of the Internal Revenue Code.

d.   This global agreement to not prosecute the criminal offenses listed in Section 4(c) immediately above applies only to offenses based upon, relating to, or arising from the following:

(1)   The facts and allegations set forth in the Superseding Indictment in this case;

(2)   The elements of the four offenses set forth in Sections 1 and 11 of this agreement, and the facts and allegations set forth in the factual basis of this agreement, Section 12, all of which defendant will admit to at the plea allocution hearing;

(3)   Evidence seized pursuant to the execution of all Northern District of

- 6 -

1   California search warrants and orders issued in this case including, but not limited to,

2   search warrants 08-70460-HRL, 08-70460-PVT, 08-70503-PVT, and 08-70502-PVT, and

3   orders 08-90330MISC-RS and 08-90331MISC-RS;

4           (4)      Evidence seized pursuant to the execution in the Eastern District of

5   California of search warrant 2:08-SW-0586-EFB;

6           (5)      Evidence contained on all digital storage medium seized in the State

7   of California in this case;

8           (6)      Evidence seized pursuant to the execution of all District of Arizona

9   warrants, orders, and subpoenas in this case including, but not limited to, warrants 08-

10  3397MB-LOA, 08-3399MB-LOA, 08-3401MB-LOA, 08-3403MB-LOA, 08-3402MB-

11  LOA, 08-3398MB-LOA, 08-6038MB-DKD and 09-7124MB-ECV, and orders 08-

12  3286MB-LOA, 08-3298MB-LOA and 08-7273MB-ECV, and Grand Jury subpoenas 07-

13  03-709, 07-03-609, and 07-03-615;

14          (7)      The evidence seized from defendant incident to his arrest in this case

15  on August 3, 2008, in the Northern District of California;

16          (8)      The case discovery released to defendant in this case as of the date

17  of this agreement;

18          (9)      The case file for this case in the possession of the United States,

19  including copies from the case file in other locations and information in court filings that

20  originated from the case discovery; or

21          (10)     Evidence obtained from defendant's communications with a

22  cooperating witness, identified throughout this case as CI-2, in the course of the

23  Government's investigation of the subject offense conduct, including but not limited to

24  the activities set forth in the factual basis of this agreement which defendant will admit to

25  at the plea allocution hearing.

26  It is understood that the agreements in Sections 4(a) through (d) immediately above do

27  not alone bar the use of any such conduct as a predicate act or as the basis for a

28

- 7 -

1 sentencing enhancement in a subsequent prosecution relating to a new offense committed
2 by the defendant after the date of this agreement.

3

4 **5.     MISCELLANEOUS AGREEMENTS**

5      a.     Stipulations Regarding Miscellaneous Agreements.   Pursuant to Fed. R.
6 Crim. P. 11(c)(1)(C), the United States and defendant stipulate and agree as set forth in
7 Sections 5(b) through 5(d) immediately below:

8      b.     The United States agrees that, for the purposes of calculating limitations
9 under Chapter 213 of Title 18, and other statutes of limitations, the amount of time that
10 has passed since defendant's arrest on August 3, 2008 is "more than five years" and that
11 defendant's true identity was known to the United States as of August 6, 2008.  Since
12 August 6, 2008, defendant has taken no action to conceal his identity from the United
13 States.

14      c.     United States agrees that, as of the date of this agreement, there are no
15 federal indictments, informations, complaints, or charges (other than those in CR-08-
16 0814-PHX-DGC) pending in any federal district against defendant DANIEL DAVID
17 RIGMAIDEN, also known as Steven Travis Brawner, Travis Rupard, Patrick Stout,
18 Andrew Johnson, George Miller, Daniel Clifton Aldrich, "KeithWilson" (online),
19 "KiethWilson" (online), "teh-hut" (online), Christopher Graham, John Jacobs and Jared
20 Ablard; also labeled by confidential informants CI-1 and CI-2 in this case, and law
21 enforcement officials as "The Hacker;" and also known to be an associate of a person
22 known only as "DarkLordZ."

23      d.     The United States agrees to abide by the terms of the attached data deletion
24 stipulation hereby incorporated by reference into this plea agreement.  (Attachment 4)

25

26 **6.     AUTHORIZATION FOR THIS AGREEMENT**

27      a.     Attachment 5 is a copy of a letter to John S. Leonardo, United States

28

*D.R.*

*F AS*

*David A. O'neil*

Attorney for the District of Arizona, from ~~Mythili Raman~~, Acting Assistant Attorney General, Criminal Division, Department of Justice, authorizing this agreement.

*Signed by Paul M. O'Brien, Deputy Assistant Attorney General, Criminal Division*

## 7.    APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION

a.    If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and must give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated.  In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

## 8.    WAIVER OF DEFENSES AND APPEAL RIGHTS

a.    The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the Indictment and Superseding Indictment; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C.

§§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c).  This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.  However, this waiver does not bar the defendant from requesting at any time that the Court modify or remove a condition of supervised release, or appeal a denial of such a request.

9.      **DISCLOSURE OF INFORMATION**

a.      The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.      Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.      The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)      criminal convictions, history of drug abuse, and mental illness; and

(2)      financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

10.      **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.      In exchange for defendant's agreement to abandon and forfeit to the United States the property listed in Attachment 1, Preliminary Order of Forfeiture, and Attachment 2, Fraudulent Tax Return Refund Summary, which fully compensates the United States for known losses to the United States caused by the defendant as a result of the conduct set forth in the factual basis of this agreement, this agreement shall be

- 10 -

1    construed to protect the defendant from administrative or civil forfeiture proceedings and

2    prohibit the United States from proceeding with and/or initiating an action for civil

3    forfeiture except for the special assessment imposed by the Court. Pursuant to 18 U.S.C.

4    § 3613, all monetary penalties, including restitution imposed by the Court, shall be due

5    immediately upon judgment and subject to immediate enforcement by the United States.

6    If the Court imposes a schedule of payments with respect to the special assessment, the

7    schedule of payments shall be merely a schedule of minimum payments and shall not be

8    a limitation on the methods available to the United States to enforce the judgment.

9         b.    The defendant agrees to forfeit, and hereby forfeits, all interests in the

10   assets and property listed in Attachment 1, Preliminary Order of Forfeiture, and

11   Attachment 2, Fraudulent Tax Return Refund Summary, which the defendant owns or

12   over which the defendant exercised control that constitutes the proceeds of the subject

13   offenses and related conduct, or which was used to facilitate the commission of the

14   subject offenses or related conduct.

15        c.    The defendant further agrees to waive all interest in any such asset in any

16   administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.

17   The defendant agrees to consent to the entry of orders of forfeiture for the specified assets

18   and property, and waives the requirements of Federal Rules of Criminal Procedure 32.2

19   regarding notice of the forfeiture in the charging instrument, announcement of the

20   forfeiture at sentencing, and incorporation of the forfeiture in the judgment.    The

21   defendant further understands and agrees that forfeiture of the specified asset and

22   property is in accordance with 21 U.S.C. § 853.

23        d.    Forfeiture of the defendant's assets and property shall be treated as

24   satisfaction of restitution but not the special assessment this Court may impose upon the

25   defendant in addition to the forfeiture.   This agreement does not preclude the United

26   States from instituting any civil or administrative proceedings as may be appropriate now

27   or in the future with respect to the special assessment.

28

e.      The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this agreement and/or any pending or completed administrative or civil forfeiture actions with respect to the special assessment based upon the course of conduct that provides the factual basis for the forfeiture, including any challenge that the forfeiture constitutes an excessive fine or punishment.  The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets and property to the United States, and to testify truthfully in any judicial forfeiture proceeding.  Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to the items listed.

f.      Defendant agrees not to file a claim to any of the assets and property listed in Attachment 1, Preliminary Order of Forfeiture, in any civil proceeding, administrative or judicial, which may be initiated.  Defendant further agrees that he will not contest civil, administrative, or judicial forfeiture of the listed property.  Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

## 11.      ELEMENTS OF OFFENSES

### Conspiracy – Count 1

From on or about January 1, 2005, and continuing through on or about August 3, 2008, in the District of Arizona, at least in part, and elsewhere,

First, there was an agreement between two or more persons to commit at least one crime as charged in the Superseding Indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

1        <u>Third</u>, one of the members of the conspiracy performed at least one overt act on or
2    after January 1, 2005 through on or about August 3, 2008, for the purpose of carrying out
3    the conspiracy, and a jury would be instructed that all of them would be required to agree
4    on a particular overt act that they found was committed.

5        A conspiracy is a kind of criminal partnership – an agreement of two or more
6    persons to commit one or more crimes. The crime of conspiracy is the agreement to do
7    something unlawful; it does not matter whether the crime agreed upon was committed.

8    **False Claims Upon the United States – An Object of the Conspiracy**

9        <u>First</u>, a member of the conspiracy made and presented to the Internal Revenue
10   Service a claim upon the United States, that is a claim for a tax refund;

11       <u>Second</u>, a member of the conspiracy knew the claim was false, fictitious and
12   fraudulent, in that the defendant was not entitled to the claimed tax refund.

13   **Wire Fraud – Counts 33 and 36**

14       On or about April 18, 2008, in the District of Arizona, at least in part:

15       <u>First</u>, with respect to each count, the defendant knowingly devised or intended to
16   devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property
17   by means of false or fraudulent pretenses, representations, or promises;

18       <u>Second</u>, the statements made or facts omitted as part of the scheme were material;
19   that is, they had a natural tendency to influence, or were capable of influencing, a person
20   to part with money or property with respect to each count;

21       <u>Third</u>, the defendant acted with the intent to defraud; that is, to deceive or cheat
22   with respect to each count; and

23       <u>Fourth</u>, the defendant transmitted, or caused to be transmitted, writings, signs,
24   signals, pictures or sounds by means of wire communication in interstate commerce to
25   carry out or attempt to carry out an essential part of the scheme with respect to each
26   count.

27       A wire communication is caused when one knows that the wires will be used in
28

- 13 -

the ordinary course of business or when one can reasonably foresee such use.  It does not matter whether the material wired was itself false or deceptive so long as a wire communication was used as a part of the scheme.

### Mail Fraud – Count 74

On or about April 14, 2008, in the District of Arizona, at least in part:

First, the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property, and a jury would be instructed that all of them would be required to agree on the statements or omissions;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme.

## 12.   FACTUAL BASIS

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

With respect to Count 1 of the Superseding Indictment, beginning on or about January 1, 2005, and continuing through on or about August 3, 2008, in the District of

Arizona, District of Utah, Northern District of California and Eastern District of California, and elsewhere, defendant DANIEL DAVID RIGMAIDEN, who personally acted in furtherance of the conspiracy in the Northern District of California, co-defendant RANSOM MARION CARTER, III, who personally acted in furtherance of the conspiracy in the District of Arizona, and a person known for purposes of the case as Confidential Informant Number 2 (herein after CI-2) until his withdrawal from the conspiracy on April 15, 2008, who personally acted in furtherance of the conspiracy in the District of Utah, knowingly and willfully agreed and conspired with each other and others, known and unknown to the United States, to commit the following offenses against the United States:

(1)     Title 18, United States Code, Section 287 (False Claims Upon the United States);

(2)     Title 18, United States Code, Section 1341 (Mail Fraud); and

(3)     Title 18, United States Code, Section 1343 (Wire Fraud).

In furtherance of the conspiracy, and to effect the objects of the conspiracy, defendant DANIEL DAVID RIGMAIDEN, co-defendant RANSOM MARION CARTER, III, CI-2 and others known and unknown to the United States, committed and caused to be committed, the following overt acts, among others:

During the period of January 1, 2005 through August 3, 2008, defendant submitted approximately 2,473 fraudulent tax returns to the Internal Revenue Service seeking approximately $5,262,387.00 in fraudulent income tax refunds. During this period, the Internal Revenue Service paid out approximately $1,904,321.48 in refunds to various accounts controlled by, or at the direction of, the defendant.  To date, approximately $1,469,990.41 of the funds paid were either seized or recovered by the Internal Revenue Service.   These acts and transactions are more fully identified in Attachment 2, Fraudulent Tax Return Refund Summary.

During the period of on or about April 27, 2007 through on or about June 3, 2007,

- 15 -

defendant DANIEL DAVID RIGMAIDEN collected personal information of deceased individuals, including their names and social security numbers, for the purpose of fraudulently preparing and fraudulently filing with the IRS, through electronic means, false claims upon the United States via false income tax returns for the purpose of fraudulently obtaining income tax refunds.

During the period beginning on or about April 27, 2007, and continuing through on or about June 3, 2007, co-defendant RANSOM MARION CARTER, III opened and maintained Compass Bank business checking account No. XXXXXX9673, in Phoenix, Arizona, and a shell accounting and tax preparation business entity, in the State of Arizona, on behalf of CI-2 to assist CI-2, defendant DANIEL DAVID RIGMAIDEN, and others known to the United States, in receiving fraudulently obtained income tax refunds from the IRS via electronic funds transfers.

During the period beginning on or about May 11, 2007, and continuing through on or about June 3, 2007, defendant DANIEL DAVID RIGMAIDEN electronically filed and caused to be electronically filed, approximately 209 false claims upon the United States via fraudulent income tax returns filed with the IRS and thereby fraudulently sought the payment of approximately $339,298.00 in income tax refunds on behalf of deceased individuals, via electronic funds transfers, into Compass Bank business checking account No. XXXXXX9673, in Phoenix, Arizona.

During the period beginning on or about May 11, 2007, and continuing through on or about May 25, 2007, defendant DANIEL DAVID RIGMAIDEN, codefendant RANSOM MARION CARTER, III and CI-2, caused Financial Management Services, with financial centers located in Austin, Texas; Kansas City, Kansas; Philadelphia, Pennsylvania; and San Francisco, California, to transfer, via electronic funds transfers, approximately $129,393.00 in fraudulently generated income tax refunds into Compass Bank Business Checking Account No. XXXXXX9673, in Phoenix, Arizona.

On or about May 11, 2007, defendant DANIEL DAVID RIGMAIDEN, in

- 16 -

1   furtherance of a knowingly and willfully devised scheme and artifice to defraud the

2   United States, and to obtain money by means of materially false and fraudulent pretenses

3   and representations, electronically filed a false claim with the United States, which

4   claimed that L.G.C., deceased in 1983, Social Security Account No. XXX-XX-2128,

5   earned income through wages in 2006, paid income taxes on the wages in 2006, and was

6   owed an income tax refund in the amount of $2,401.00, and requested that the false claim

7   be paid via an electronic funds transfer into Compass Bank business checking account

8   No. XXXXXX9673, in Phoenix, Arizona.

9       On or about May 11, 2007, defendant DANIEL DAVID RIGMAIDEN, in

10  furtherance of a knowingly and willfully devised scheme and artifice to defraud the

11  United States, and to obtain money by means of materially false and fraudulent pretenses

12  and representations, electronically filed a false claim with the United States, which

13  claimed that J.L.C., deceased in 1983, Social Security Account No. XXX-XX-3450,

14  earned income through wages in 2006, paid income taxes on the wages in 2006, and was

15  owed an income tax refund in the amount of $2,379.00, and requested that the false claim

16  be paid via an electronic funds transfer into Compass Bank business checking account

17  No. XXXXXX9673, in Phoenix, Arizona.

18      During the period of on or about March 3, 2008 through on or about April 15,

19  2008, defendant DANIEL DAVID RIGMAIDEN collected personal information of

20  deceased individuals, including their names and social security numbers, for the purpose

21  of fraudulently preparing and fraudulently filing with the IRS, through electronic means,

22  false claims upon the United States via false income tax returns for the purpose of

23  fraudulently obtaining income tax refunds.

24      During the period of on or about January 1, 2008 through on or about February 12,

25  2008, CI-2 directed a confidential informant, who was then working on behalf of the

26  government (CI-1), to open a business checking account and a shell accounting and tax

27  preparation business entity in the State of Arizona, for use by defendant DANIEL

28

- 17 -

1   DAVID RIGMAIDEN for the purpose of receiving fraudulently obtained income tax

2   refunds from the IRS via electronic funds transfers.  A government undercover agent,

3   working with a confidential informant working on behalf of the government (CI-1),

4   subsequently opened Meridian Bank business checking account No. XXXXXX0007

5   (hereinafter "the Meridian Account"), in Phoenix, Arizona, in order to assist defendant

6   DANIEL DAVID RIGMAIDEN for this purpose.

7          During the period of on or about March 3, 2008, and continuing until on or about

8   April 15, 2008, defendant DANIEL DAVID RIGMAIDEN electronically filed and

9   caused to be electronically filed approximately 361 false claims upon the United States

10  via fraudulent income tax returns filed with the IRS, and thereby fraudulently sought the

11  payment of approximately $668,876.00 in income tax refunds on behalf of deceased

12  individuals, via electronic funds transfers, into the Meridian Account.

13         During the period of on or about March 3, 2008 through on or about April 4, 2008,

14  defendant DANIEL DAVID RIGMAIDEN caused the Austin Financial Center, Financial

15  Management Services, Austin, Texas, to transfer, via electronic funds transfers,

16  approximately $447,407.00 in fraudulently generated income tax refunds into the

17  Meridian Account.

18         On or about March 3, 2008, defendant DANIEL DAVID RIGMAIDEN, in

19  furtherance of a knowingly and willfully devised scheme and artifice to defraud the

20  United States, and to obtain money by means of materially false and fraudulent pretenses

21  and representations, electronically filed a false claim with the United States which

22  claimed that G.A., deceased in 1983, Social Security Account No. XXX-XX-8286,

23  earned income through wages in 2007, paid income taxes on the wages in 2007, and was

24  owed an income tax refund in the amount of $2,184.00, and requested that the false claim

25  be paid via an electronic funds transfer into the Meridian Account.

26         On or about March 4, 2008, defendant DANIEL DAVID RIGMAIDEN, in

27  furtherance of a knowingly and willfully devised scheme and artifice to defraud the

28

- 18 -

United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that T.M., deceased in 1992, Social Security Account No. XXX-XX-7781, earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,303.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On or about March 4, 2008, defendant DANIEL DAVID RIGMAIDEN, in furtherance of a knowingly and willfully devised scheme and artifice to defraud the United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that N.D., deceased in 1979, Social Security Account No. XXX-XX-2048, earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,405.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On or about March 4, 2008, defendant DANIEL DAVID RIGMAIDEN, in furtherance of a knowingly and willfully devised scheme and artifice to defraud the United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that D.M., deceased in 1992, Social Security Account No. XXX-XX-0878, earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,117.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On or about March 4, 2008, defendant DANIEL DAVID RIGMAIDEN, in furtherance of a knowingly and willfully devised scheme and artifice to defraud the United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that D.D., deceased in 1990, Social Security Account No. XXX-XX-9821,

- 19 -

earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,274.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On or about March 5, 2008, defendant DANIEL DAVID RIGMAIDEN, in furtherance of a knowingly and willfully devised scheme and artifice to defraud the United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that D.D., deceased in 1996, Social Security Account No. XXX-XX-4531, earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,204.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On or about March 5, 2008, defendant DANIEL DAVID RIGMAIDEN, in furtherance of a knowingly and willfully devised scheme and artifice to defraud the United States, and to obtain money by means of materially false and fraudulent pretenses and representations, electronically filed a false claim with the United States which claimed that M.A., deceased in 1978, Social Security Account No. XXX-XX-8014, earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount of $2,485.00, and requested that the false claim be paid via an electronic funds transfer into the Meridian Account.

On about March 14, 2008, CI-2 directed a confidential informant working on behalf of the government (CI-1) to ship $9,000.00 of fraudulently obtained income tax refunds, previously deposited in the Meridian Account, to a commercial mail receiving agency located in the State of Utah for the benefit of CI-2 and defendant DANIEL DAVID RIGMAIDEN.

On or about March 19, 2008, CI-2 picked up a Federal Express package containing $9,000.00 of fraudulently obtained income tax refunds, previously deposited in the Meridian Account, from a commercial mail receiving agency located in the State of

1     Utah.

2        During the week of March 24, 2008, CI-2 directed a confidential informant

3 working on behalf of the government (CI-1) to ship $9,000.00 of fraudulently obtained

4 income tax refunds, previously deposited in the Meridian Account, to a commercial mail

5 receiving agency located in the State of Utah.

6        On or about March 21, 2008, defendant DANIEL DAVID RIGMAIDEN

7 knowingly accessed a proxy server program running on a computer, used in interstate

8 commerce and communication, via an anonymizing service which, unknown to

9 defendant, accessed the computer without authorization from the computer's owner, a

10 private individual and resident of Glendale, Arizona, and by means of such conduct,

11 including the use of Internet Provider Address XX.XXX.XXX.106, accessed the

12 Meridian Account and obtained the current balance of account's funds, all of which were

13 obtained through the electronic filing of fraudulent income tax returns.

14        On or about March 22, 2008, defendant DANIEL DAVID RIGMAIDEN, in

15 furtherance of a knowingly and willfully devised scheme and artifice to defraud the

16 United States, and to obtain money by means of materially false and fraudulent pretenses

17 and representations, electronically filed a false claim with the United States which

18 claimed that T.C.C., deceased in 1995, Social Security Account No. XXX-XX-9560,

19 earned income through wages in 2007, paid income taxes on the wages in 2007, and was

20 owed an income tax refund in the amount of $4,286.00, and requested that the false claim

21 be paid via an electronic funds transfer into the Meridian Account.

22        On or about March 22, 2008, defendant DANIEL DAVID RIGMAIDEN, in

23 furtherance of a knowingly and willfully devised scheme and artifice to defraud the

24 United States, and to obtain money by means of materially false and fraudulent pretenses

25 and representations, electronically filed a false claim with the United States which

26 claimed that F.A.C., deceased in 1996, Social Security Account No. XXX-XX-3782,

27 earned income through wages in 2007, paid income taxes on the wages in 2007, and was

28

1   owed an income tax refund in the amount of $4,083.00, and requested that the false claim
2   be paid via an electronic funds transfer into the Meridian Account.

3           On or about March 22, 2008, defendant DANIEL DAVID RIGMAIDEN, in
4   furtherance of a knowingly and willfully devised scheme and artifice to defraud the
5   United States, and to obtain money by means of materially false and fraudulent pretenses
6   and representations, electronically filed a false claim with the United States which
7   claimed that M.C., deceased in 1988, Social Security Account No. XXX-XX-1744,
8   earned income through wages in 2007, paid income taxes on the wages in 2007, and was
9   owed an income tax refund in the amount of $3,931.00, and requested that the false claim
10  be paid via an electronic funds transfer into the Meridian Account.

11          On or about March 23, 2008, defendant DANIEL DAVID RIGMAIDEN, in
12  furtherance of a knowingly and willfully devised scheme and artifice to defraud the
13  United States, and to obtain money by means of materially false and fraudulent pretenses
14  and representations, electronically filed a false claim with the United States which
15  claimed that P.C.A., deceased in 1985, Social Security Account No. XXX-XX-5274,
16  earned income through wages in 2007, paid income taxes on the wages in 2007, and was
17  owed an income tax refund in the amount of $4,390.00, and requested that the false claim
18  be paid via an electronic funds transfer into the Meridian Account.

19          On or about March 23, 2008, defendant DANIEL DAVID RIGMAIDEN, in
20  furtherance of a knowingly and willfully devised scheme and artifice to defraud the
21  United States, and to obtain money by means of materially false and fraudulent pretenses
22  and representations, electronically filed a false claim with the United States which
23  claimed that J.D.F., deceased in 1993, Social Security Account No. XXX-XX-6845,
24  earned income through wages in 2007, paid income taxes on the wages in 2007, and was
25  owed an income tax refund in the amount of $3,795.00, and requested that the false claim
26  be paid via an electronic funds transfer into the Meridian Account.

27          On or about March 24, 2008, defendant DANIEL DAVID RIGMAIDEN, in
28

1   furtherance of a knowingly and willfully devised scheme and artifice to defraud the
2   United States, and to obtain money by means of materially false and fraudulent pretenses
3   and representations, electronically filed a false claim with the United States which
4   claimed that S.D., deceased in 1989, Social Security Account No. XXX-XX-8032, earned
5   income through wages in 2007, paid income taxes on the wages in 2007, and was owed
6   an income tax refund in the amount of $4,979.00, and requested that the false claim be
7   paid via an electronic funds transfer into the Meridian Account.

8       On or about March 24, 2008, defendant DANIEL DAVID RIGMAIDEN, in
9   furtherance of a knowingly and willfully devised scheme and artifice to defraud the
10  United States, and to obtain money by means of materially false and fraudulent pretenses
11  and representations, electronically filed a false claim with the United States which
12  claimed that T.A.F., deceased in 1984, Social Security Account No. XXX-XX-3957,
13  earned income through wages in 2007, paid income taxes on the wages in 2007, and was
14  owed an income tax refund in the amount of $4,891.00, and requested that the false claim
15  be paid via an electronic funds transfer into the Meridian Account.

16      On or about March 24, 2008, defendant DANIEL DAVID RIGMAIDEN, and
17  others known and unknown to the Grand Jury, in furtherance of a knowingly and
18  willfully devised scheme and artifice to defraud the United States, and to obtain money
19  by means of materially false and fraudulent pretenses and representations, electronically
20  filed a false claim with the United States which claimed that M.A.F., deceased in 1987,
21  Social Security Account No. XXX-XX-8609, earned income through wages in 2007, paid
22  income taxes on the wages in 2007, and was owed an income tax refund in the amount of
23  $4,817.00, and requested that the false claim be paid via an electronic funds transfer into
24  the Meridian Account.

25      On or about March 24, 2008, defendant DANIEL DAVID RIGMAIDEN, in
26  furtherance of a knowingly and willfully devised scheme and artifice to defraud the
27  United States, and to obtain money by means of materially false and fraudulent pretenses
28

- 23 -

1  and representations, electronically filed a false claim with the United States which

2  claimed that M.M.D., deceased in 1986, Social Security Account No. XXX-XX-2273,

3  earned income through wages in 2007, paid income taxes on the wages in 2007, and was

4  owed an income tax refund in the amount of $4,101.00, and requested that the false claim

5  be paid via an electronic funds transfer into the Meridian Account.

6       On or about April 2, 2008, CI-2 picked up a Federal Express package containing

7  $9,000.00 of fraudulently obtained income tax refunds, previously deposited in Meridian

8  Bank business checking account No. XXXXXX0007, in Phoenix, Arizona, from a

9  commercial mail receiving agency located in the State of Utah.

10       On or about April 15, 2008, CI-2 picked up a Federal Express package containing

11  $9,000.00 of fraudulently obtained income tax refunds, previously deposited in the

12  Meridian Account, from a commercial mail receiving agency located in the State of Utah.

13       Along with the facts noted above, for purposes of Counts 33 and 36 of the

14  Superseding Indictment, beginning on or about January 1, 2005, and continuing through

15  on or about August 3, 2008, in the District of Arizona and elsewhere, defendant DANIEL

16  DAVID RIGMAIDEN, co-defendant RANSOM MARION CARTER, III, and a person

17  known for purposes of the case as CI-2 until his withdrawal from the subject conspiracy

18  on April 15, 2008, knowingly and willfully devised and intended to devise a scheme and

19  artifice to defraud and to obtain money by means of materially false and fraudulent

20  pretenses, representations and promises.

21       On or about May 5, 2008, defendant DANIEL DAVID RIGMAIDEN picked up a

22  Federal Express package containing $68,000.00 of fraudulently obtained income tax

23  refunds, previously deposited in the Meridian Account, from a commercial mail receiving

24  agency located in Palo Alto, California.

25       On or about the dates listed below, in the District of Arizona and elsewhere, for

26  the purpose of executing said scheme and artifice to defraud and to obtain money by

27  means of materially false and fraudulent pretenses, representations and promises,

28

- 24 -

defendant DANIEL DAVID RIGMAIDEN knowingly transmitted or caused to be transmitted, by means of wire and radio communications in interstate commerce, certain writings, pictures, signals and sounds (i.e. electronic funds transfers), from the State of Texas to the State of Arizona as set forth in the chart below, each such instance being a separate Count of the Superseding Indictment:

| Ct | Date of Funds Transfer – On or About | Deceased Taxpayer and Year of Death – On or About (SSN) [Refund Amount Claimed and Paid] | Funds Originator (Funds Recipient) [Type of Transaction] | Materially False Representations (Defendant(s)) |
|---|---|---|---|---|
| 33 | 04/18/08 | S.D. - 1989 (XXX-XX-8032) [$4,979.00] | Austin Financial Center, Financial Management Services, Austin, TX (Meridian Bank, Account No. XXXXXX0007 – Phoenix, AZ) [Electronic Funds Transfer] | The deceased taxpayer earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount claimed.  Return containing the materially false representations filed on or about March 24, 2008. (Rigmaiden) |
| 36 | 04/18/08 | M.M.D. - 1986 (XXX-XX-2273) [$4,101.00] | Austin Financial Center, Financial Management Services, Austin, TX (Meridian Bank, Account No. XXXXXX0007 – Phoenix, AZ) [Electronic Funds Transfer] | The deceased taxpayer earned income through wages in 2007, paid income taxes on the wages in 2007, and was owed an income tax refund in the amount claimed.  Return containing the materially false representations filed on or about March 24, 2008. (Rigmaiden) |

Along with the facts noted above, for purposes of Count 74 of the Superseding Indictment, during the period of on or about January 1, 2005 through on or about April

- 25 -

15, 2008, in the District of Arizona and elsewhere, defendant DANIEL DAVID RIGMAIDEN, co-defendant RANSOM MARION CARTER, III, and a person known for purposes of the case as CI-2 until his withdrawal from the subject conspiracy on April 15, 2008, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

On or about the date listed below, in the District of Arizona and elsewhere, for the purpose of executing and attempting to execute said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, defendant DANIEL DAVID RIGMAIDEN caused to be deposited for delivery by a private and commercial interstate carrier, from the District of Arizona to the District of Utah, as set forth in the chart below, the instance relating to Count 74 of the Superseding Indictment:

| Ct | Date Sent – On or About | Sent From (Carrier) [State Sent to] | Items Sent (Materially False Representations) |
|----|----|----|----|
| 74 | 4/14/08 | Tempe, Arizona (Federal Express) [Utah] | $9,000.00 in U.S. Currency – Federal Express Package Bearing Tracking No. XXXXXXXXX405 (Deceased taxpayers earned income through wages in 2007, paid income taxes on the wages in 2007, and were owed income tax refunds in various amounts claimed.) |

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

/

/

- 26 -

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT – PRO SE

I have personally read the entire plea agreement. I understand each of its provisions and I voluntarily agree to them.

I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have personally researched the nature of the charges to which I am entering my guilty plea. I have further personally researched the nature and range of the possible sentence and fully understand that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that when I am placed on supervised release by the Court, the terms and conditions of my supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my supervised release, my supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may

1   not be in the public record.

2        I further agree that promises, including any predictions as to the Sentencing

3   Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

4   (including my advisory attorney) that are not contained within this written plea

5   agreement, are null and void and have no force and effect.

6        I am satisfied that my advisory defense attorney has assisted me in a competent

7   manner.

8        I fully understand the terms and conditions of this plea agreement.  I am not now

9   using or under the influence of any drug, medication, liquor, or other intoxicant or

10  depressant that would impair my ability to fully understand the terms and conditions of

11  this plea agreement.

12

13

14  January 27, 2014

    Date                                DANIEL DAVID RIGMAIDEN

15                                       Defendant

16

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28  /

- 28 -

1

## APPROVAL OF THE UNITED STATES

2       We have reviewed this matter and the plea agreement.  We agree on behalf of the

3   United States that the terms and conditions set forth herein are appropriate and are in the

4   best interests of justice.

5

6                                         JOHN S. LEONARDO
                                      United States Attorney

7                                         District of Arizona

8

9   **4/7/14**

10  Date                                  FREDERICK A. BATTISTA

11                                      JAMES R. KNAPP
                                    PETER S. SEXTON

12                                      Assistant U.S. Attorneys

13                       ACCEPTANCE BY THE COURT

14

15  **4/9/14**

16  Date                                  Honorable DAVID G. CAMPBELL
                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

**Attachment 1**

**Preliminary Order of Forfeiture**

1    JOHN S. LEONARDO
2    United States Attorney
     District of Arizona
3
4    FREDERICK A. BATTISTA
     Maryland State Bar Member
5    PETER S. SEXTON
     Arizona State Bar No. 011089
6    JAMES R. KNAPP
7    Arizona State Bar No. 021166
     Assistant U.S. Attorneys
8    Two Renaissance Square
9    40 North First Avenue, Suite 1200
     Phoenix, Arizona 85004
10   Telephone: (602) 514-7500
     Fred.Battista@usdoj.gov
11   Peter.Sexton@usdoj.gov
12   James.Knapp2@usdoj.gov
     Attorneys for Plaintiff
13
                         UNITED STATES DISTRICT COURT
14
                              DISTRICT OF ARIZONA
15
16   United States of America,                 CR-08-0814-001-PHX-DGC
17                         Plaintiff,          PRELIMINARY ORDER OF
                 v.                                  FORFEITURE
18
     Daniel David Rigmaiden,
19
                          Defendant.
20
21        As the result of the defendant's guilty plea to Count 1 of the Superseding

22   Indictment, Conspiracy, a violation of 18 U.S.C. § 371, a Class D felony offense; Counts

23   33 and 36 of the Superseding Indictment, Wire Fraud, violations of 18 U.S.C. § 1343,

24   Class C felony offenses; and Count 74 of the Superseding Indictment, Mail Fraud, a

25   violation of 18 U.S.C. § 1341, a Class C felony offense, and, the defendant having

26   admitted to the forfeiture allegations contained in the Superseding Indictment and agreed

27   to forfeit and abandon to the United States, all right, title and interest in the property

28   involved in the violations of the statutes set forth above including but not limited to:

| Property Description | Value |
|---|---|
| MSR206 Magnetic Strip Card Reader/Writer | $    250.00 |
| Craft External Hard Drive Enclosure | $     50.00 |
| Cool Gear External HDD Model TBM120 | $    100.00 |
| Acer Laptop Aspire 3624WXCI S/N #LXAA6050876090F641KS00 | $    300.00 |
| Keyboard | $      5.00 |
| Epson Stylus Photo R1900 S/N #KBQE004967 | $    400.00 |
| Epson Perfection V750 ProScanner S/N #G77W001673 | $    650.00 |
| One (1) Alps printer MD-1000 S/N #B28C0948H; one (1)TAHSIN-HIC-HOP Laminator Model TCC-160 S/N #8800707 | $    250.00 |
| Epson Stylus Photo 960 S/N #EPVY024944 Printer | $    200.00 |
| Sony CyberShot Camera, 2 GB memory card, cords & battery charger | $    200.00 |
| SecuMate Security Recorder, Wireless Camera Hunter, RF Signal Detector, VCD-43 Signal Detector, Parascope viewer, wireless video receiver, light wave detector-"Spy Finder", pocket scope, chipboard & covert video camera, and covert camera & microphone kit | $  1,810.00 |
| **EVIDENCE:** U.S. Mint Container "Green" with 25 Containers of 20 Silver Dollars each (500 total coins) | $  8,685.00 |
| **EVIDENCE:** One (1) Green U.S. Mint Container with 88 Large Silver Colored Coins, 139 Large Gold Colored Coins, 29 Small Gold Colored Coins | $130,054.49 |
| **EVIDENCE:** Eleven (11) small, four (4) large Assorted Gold Eagle Coins | $  4,619.33 |
| U.S. Currency - $46,340.00 | $ 46,340.00 |
| U.S. Currency - Bancorp Bank Treasurer Check No. 43033, dated 8/27/2008, for $19,298.90 -- Proceeds from entire monetary balance of the prepaid cards at The Bancorp Bank (Wilmington, DE) | $ 19,298.90 |
| U.S. Currency - $70,000.00 | $ 70,000.00 |
| **EVIDENCE:** One Hundred (100) 1/10-oz. gold coins and seventy-three (73) 1-oz. gold coins | $ 75,177.25 |
| Coolgear External HDD Model SCS12B | $     80.00 |
| U.S. Currency -- Wells Fargo Bank, NA Check No. 68447, dated 9/4/08, for $4,249.12 -- Proceeds from entire monetary balance of the prepaid cards at GE Money Bank (Kettering, OH) | $  4,249.12 |
| U.S. Currency -- Silicon Valley Bank Check No. 142381, dated 9/5/08, for $303.96 -- Proceeds from entire monetary balance of the prepaid cards at Netspend Corporation (Austin, TX) | $    303.96 |
| U.S. Currency -- MetaBank Check No. 30095792, dated 9/5/08, for $28,543.79 -- Proceeds from entire monetary balance of the prepaid cards at MetaBank (Sioux Falls, SD) | $ 28,543.79 |

2

| | |
|---|---|
| U.S. Currency -- Zions Bank Check No. 61-131596032, dated 09/12/08, for $44,079.21 -- Proceeds from the entire monetary balance of the prepaid cards at Galileo Processing (Salt Lake City, UT). | $ 44,079.21 |
| Various ATM Withdrawals totalling $17,100.00 (Salt Lake City, UT) - from April to June, 2008 | $ 17,100.00 |
| Subtotal | $452,746.04 |

| | |
|---|---|
| Four (4) oz. of Gold (@ $869.75 per oz. as of 12/30/08 - Kitco.com) | $ 3,479.00 |
| Voice recorder | $ 534.00 |
| U.S. Currency -- Cathay Bank Check No. 27359, dated 1/21/2009, for $61,692.62 | $ 61,692.62 |
| U.S. Currency -- US Bank Check No. 5120500568, dated 3/19/2009, for $22,322.91 | $ 22,322.91 |

**TOTAL VALUE**                                     **$540,774.57**

**Value of Precious Coins Set Forth Below**                    **Silver**
4 Aug 08 - Value/Pricing per Kitco                          $   17.37
                                                            **Gold**
4 Aug 08 - Value/Pricing per Kitco                          905.75
30 Dec 08 - Value/Pricing per Kitco                         869.75

1 oz. (500) Silver Coins * $17.37/each                      **$  8,685.00**

1 oz. (88) Silver Coins *17.37                              $   1,528.56
1 oz. (139) Gold Coins * 905.75                             $125,899.25
1/10 oz. (29) Gold Coins * 905.75                           $   2,626.68

                                                            **$130,054.49**

1/10 oz. (11) Gold Coins * 905.75                           $    996.33
1 oz. (4) Gold Coins * 905.75                               $   3,623.00

                                                            **$  4,619.33**

1/10 oz. (100) * 905.75                                     9,057.50
1 oz. (73) * 905.75                                         66,119.75

                                                            **$ 75,177.25**

1 oz. (4) Gold Coins * 869.75                               **$  3,479.00**

3

1  collectively referred to as "subject property",

2       The Court has determined that the subject property described above is subject to

3  forfeiture pursuant to 21 U.S.C. § 853, and 18 U.S.C. 982, and that the Government has

4  established the requisite nexus between such property and the offenses to which the

5  defendant pled guilty.  The Court finds that, based on the defendant's guilty plea, he has

6  forfeited all right title and interest he may have in the above listed property.

7       Upon the entry of this Order, the United States is authorized to seize the subject

8  property listed above and to conduct any discovery proper in identifying, locating or

9  disposing of the property subject to forfeiture, in accordance with Fed. R. Crim. P.

10  32.2(b)(3).  Upon entry of this Order, the United States Attorney General (or his designee)

11  is authorized to commence any applicable proceeding to comply with statutes governing

12  third party rights, including giving notice of this Order.

13       Any person, other than the above-named defendant, asserting a legal interest in the

14  subject property may, within thirty days of the final publication of notice or receipt of

15  notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the

16  validity of any alleged interest in the subject property, and for an amendment of the order

17  of forfeiture, pursuant to 21 U.S.C. § 853(n).

18       Pursuant to Fed. R. Crim. P. 32.2(b)(3), this Preliminary Order of Forfeiture shall

19  become final as to the defendant at the defendant's sentencing and shall be included in the

20  sentence and judgment.  If no third party files a timely claim, this Order shall become the

21  Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).

22       Any petition filed by a third party asserting an interest in the subject property shall

23  be signed by the petitioner under penalty of perjury and shall set forth the nature and

24  extent of the petitioner's right, title, or interest in the subject property, the time and

25  circumstances of the petitioner's acquisition of the right, title or interest in the subject

26  property, and any additional facts supporting the petitioner's claim and the relief sought

27  and serve a copy upon James R. Knapp, Assistant United States Attorney.

28

After the disposition of any motion filed pursuant to Fed. R. Crim. P. 32.2(c)(1)(A) and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

The United States shall have clear title to the subject property following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853(n)(2), for the filing of third party petitions.

The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

SO ORDERED:

Dated:

**Attachment 2**

**Fraudulent Tax Return Refund Summary**

| Institution | Account Number | Initials | Year | Count | Amount | Amount | Value | Notes |
|---|---|---|---|---|---|---|---|---|
| Bank of America | XXXXXXXXX4907 | C.J. | 2005 | 40 | $274,422.00 | $88,965.00 | $ - | |
| Citibank | XXXXX9927 | J.M.G. | 2005 | 21 | $144,620.00 | $82,820.00 | $ - | |
| Suntrust | XXXXXXXXX8846 | C.J. | 2005 | 10 | $68,551.00 | $20,436.00 | $ - | |
| TCF National Bank | XXXXX3974 | A.C. | 2005 | 10 | $68,371.00 | $6,703.00 | $ - | |
| Wachovia | XXXXXXX1733 | R.R. | 2005 | 8 | $46,159.00 | $39,329.00 | $ - | |
| Wachovia | XXXXXXXX8969 | R.R. | 2005 | 9 | $52,761.00 | $45,920.00 | $ - | |
| US Bank | XXXXXXXX3255 | T.R. | 2005 | 7 | $50,935.00 | $22,253.35 | $ 22,322.91 | 86090076 - Seized |
| Cathay Bank | XXXX2050 | L.P. | 2005 | 33 | $226,016.00 | $81,597.00 | $ 61,692.62 | 86090001 - Seized |
| Southwest Bank | XXXXX8504 | A.J. | 2005 | 25 | $191,764.00 | $191,764.00 | $ 158,761.78 | General Fund - Returned to IRS |
| Southwest Bank | XXXXX3243 | L.P. | 2005 | 7 | $14,421.00 | | $ - | |
| Compass Bank | XXXXX9673 | R.C. | 2006 | 209 | $339,298.00 | $129,364.00 | $ 104,864.00 | General Fund - Returned to IRS |
| Meridian Bank | XXXXX0121 | C.L. | 2006 | 167 | $253,563.00 | $1,373.80 | $ 1,373.80 | General Fund - Returned to IRS |
| Other Identified Accounts | Various | | 2006 | 230 | $519,179.00 | | $ - | |
| Meridian/B of A | Undercover Accounts | | 2007 | 759 | $1,398,157.00 | $1,024,500.33 | $ 1,024,500.33 | General Fund - Returned to IRS |
| Debit Card Accounts | Various | | 2007 | 938 | $1,614,170.00 | $169,296.00 | $ 96,474.97 | 86080010, 86080014, 86080015, 86080016, 86080018 - All Seized |
| **Totals:** | | | | 2473 | $5,262,387.00 | $1,904,321.48 | $ 1,469,990.41 | |

**ITEMS SEIZED PURSUANT TO SEARCH WARRANTS**

| Description | | | | | Amount | Amount | Value basis | Notes |
|---|---|---|---|---|---|---|---|---|
| Various ATM Withdrawals from April - June 2008 | | | | | $ 17,100.00 | $ 17,100.00 | | 86080019 |
| Silver Coins (588) | | | | | $ 10,213.50 | $ 12,836.04 | $21.83/oz. Value as of 6/13/13 | 86080009-14, 86080009-15 |
| Gold Coins (234 oz.) | | | | | $ 211,801.38 | $ 324,066.60 | $1,384.90/oz. Value as of 6/13/13 | 86080009-15, 86080009-16, 86080012-02, 86090003-01 |
| US Currency located in Apartment | | | | | $ 46,340.00 | $ 46,340.00 | | 86080009-17 |
| US Currency located in Storage Unit | | | | | $ 70,000.00 | $ 70,000.00 | | 86080012-01 |
| | | | | | $ 355,454.88 | $ 470,342.64 | | |

| | Amount | Amount |
|---|---|---|
| Total Amount Released | $ 1,904,321.48 | $ 1,904,321.48 |
| Minus: Total Amount Available for Forfeiture or Returned to General Fund | $ 1,825,445.29 | $ 1,940,333.05 |
| Possible RESTITUTION | $ 78,876.19 | $ (36,011.57) |

**Attachment 3**

**Return and Abandonment of Property**

Inventory Listing of All Items Seized at Search Warant Sites

| Item | | |
|------|---|---|
| 2 Brass Colored Keys & 3 Silver Colored Keys | X | X |
| Phillips Norelco Cody Electric Razor with Charger and Attachments | X | X |
| Gillette Match 3 Turbo Razor w/ no blade | X | X |
| Braun Oral B Electric Toothbrush in blue case | X | X |
| Micro Touch Turbo hair trimmer in yellow case | X | X |
| 2 Dental picks in white case | X | X |
| Hair Trimmer attachments (long & short side) | X | X |
| grey razor size box containing 2 hair trimmer attachments | X | X |
| 1 "La Cross" nail clipper, silver toned | X | X |
| 1 silver toned "Bassett" tweezer | X | X |
| 1 small black "Ace" comb | X | X |
| 1 black plastic case containing "Wahl" rechargeable cord/cordless electric hair trimmer w/ plug and attachments | X | X |
| 1 hanger holding black "Arcteryx" hooded jacket (CA#34438) Size M/M and matching Goretex pants size M/M | X | |
| 1 "Eagle Creek Travel Gear" black zip duffle-style bag | X | X |
| 1 Black "Arcteryx" jacket (CA#34438, 57130505) Size M/M hooded, half ziped (Skeletal logo on left chest) | X | X |

1

Inventory Listing of All Items Seized at Search Warant Sites

| Item | | | |
|---|---|---|---|
| 1 Black Adidas "Clima 365" (CA#40312, RN#88387) Size USA M w/striped leg pants | x | | |
| SecuMate Security Recorder | | x | |
| Wireless Camera Hunter | | x | |
| RF Signal Detector | | x | |
| VCD-43 Signal Detector | | x | |
| Parascope Viewer | | x | |
| Mini 4 Channel Receiver (incorrectly labeled on inventory sheet as a "wireless video receiver") | x | x | |
| Startech.com Video to DVI/HDTV Scaler/Video Converter (Incorrectly labled on inventory sheet as an "IP Video receiver and converter") | x | | |
| Light Wave Detector - "Spy Finder" | | x | |
| Pocket Scope | | x | |
| Chipboard covert video camera | | x | |
| Grey metal case containing a WRAP Board 2C2 Embedded Computer for custom wireless network routers | | x | |
| Covert camera and microphone kit | | x | |
| Books: Bug Book, Scanners & Secret Frequencies, Techniques in Countersurveillance, Advanced Surveillance | | x | |
| Books: Surveillance Countermeasures, Secrets of Surveillance | x | x | |
| Book: The Paper Trip III | | | x |

2

Inventory Listing of All Items Seized at Search Warant Sites

| Item | | |
|------|---|---|
| The Passport Report | X | |
| CDL # DXXX0214 & Mastercard #XXXX-XXXX-XXXX-2333 - S.T.B | | X |
| CDL # DXXX4729 & UC Davis ID - G.A.M | | X |
| CDL #DXXX7964 - J.A.F | | X |
| CDL #DXXX5324 & UC Davis ID - P.S. | | X |
| CDL #DXXX4729 - J.A.K. | | X |
| CDL # DXXX0581 & UC Davis ID - E.L.B. | | X |
| CA ID #8XXX1564 - D.D.R. | X | |
| Only 1 Visa #XXXX-XXXX-XXXX-3523 | | X |
| Domocilio Parking Tag # 0012 | | X |
| Safeway Club Card #XXXXXXXXX9134 | | X |
| MSR206 Magnetic Strip Card Reader/Writer | | X |
| Identification Form/Punch | | X |
| Books: Identity Theft, How to be Invisible, MVR Book Decoder Digest, MVR Motor Services | | X |
| Book: Disguise Techniques | X | |
| Book: Detailing Computer Training | X | |
| Verizon Wireless Card #P/N PC5740VW | X | |
| IBM Thinkpad S/N #LV-C4398 with Mouse, Keys, Docking Station & Power Cord | X | |
| Craft External Hard Drive Enclosure | | |
| Sandisk 2.0 GB Compact Flash Card (empty) | X | X |
| Nokia Cingular Cell Phone "STB" scratched on back | X | |

Inventory Listing of All Items Seized at Search Warrant Sites

| Item | | |
|------|---|---|
| Motorola ATT Cell Phone "S" scratched on back | X | |
| Motorola Cingular Cell Phone "C" scratched on back | X | |
| Motorola ATT Cell Phone "L" scratched on back | X | |
| Motorola ATT Cell Phone | X | |
| Motorola Charger for Model SSW-1189US (2) | X | |
| Nokia Charger | X | |
| Cool Gear External HDD Model TBM120 | | X |
| Garmin 60CS GPS Map (Wiped) | X | |
| Windows Vista Upgrade Disks | X | |
| 5 Unlabeled Empty CDs in cases | X | |
| Seagate 250 GB Hard Drive S/N #5QE1W2CP | | X |
| Dane-Elec 1 GB Hard Drive (Empty) | X | |
| Grey CD Sleeve of Assorted CDs - (Operating System Disc and System Recovery Disks) | X | |
| Acer Laptop Aspire 3624WXCI S/N #LXAA60508760090F641KS00 | | X |
| Image of Toshiba MK1032GA 100GB HD External Hard Drive (USB) in XCRAFT Enclosure | | X |
| WIN RAR Archive (Partial) of "T" Drive | | X |
| Image of Hitachi 100 GB HDD S/N #MPCZN7Y0J7N51L | | X |
| Keyboard | | X |

4

Inventory Listing of All Items Seized at Search Warant Sites

| Item | | | | | | |
|------|---|---|---|---|---|---|
| US Mint Container "Green" with 25 containers of 20 Silver Dollars each (500 total coins) | x | | | | | |
| 1 Green US Mint Container with 88 large Silver colored coins | x | | | | | |
| 139 Large Gold Colored Coins | x | | | | | |
| 29 small gold colored coins | x | | | | | |
| 11 small and 4 large Assorted Gold Eagle Coins | x | | | | | |
| Bag of Currency | x | | | | | |
| Epson Stylus Photo R1900 S/N #KBQE004967 | x | | | | | |
| Epson Perfection V750 ProScanner S/N#G77W001673 | x | | | | | |
| 1 Alps pinter MD-1000 S/N B28C0948H | x | | | | | |
| 1 Tashin-HIC_HOP Laminator Model TCC-160 S/N 8800707 | x | | | | | |
| Misc. Materials and Equipment consistent with making/producing Identification | x | | | | | |
| EPSON Stylus Photo 960 S/N EPV Y024944 | | | | | | |
| Printer Black and Miscellaneous Ink and Supplies | | | | | | |
| Family Tree Maker Manual and 13 disks | x | | | | | |
| EPSON Perfection CDs for scanner software | x | | | | | |
| Photoshop Elements | x | | | | | |
| Lasersoft Imaging Manual and CD | x | | | | | |
| Sony Cyber Shot Camera and 2GB memory card with cords and battery charger | x | | | | | |

Inventory Listing of All Items Seized at Search Warrant Sites

| Item | | |
|---|---|---|
| Lock Picking Equipment | | |
| Bump Hammer | | |
| Misc Keys | | X |
| Retractable Knife | | X |
| 1st Advantage Credit Report - Brawner | X | X |
| 4 DV Video Tapes (opened) | X | X |
| Blank DV Tapes (unopened) | | X |
| Birth Certificate & Passport - A.G.J. | | X |
| Certificate of Live Birth - S.T.B. | | X |
| Federal Income Tax Returns for S.T.B., TY 2005, 2006 and 2007 | | |
| Key Katcher Booklet | | X |
| Visa All Access Cards (19) | | X |
| Visa Debit Only Cards | | X |
| Visa Vision Premier Debit Cards | | X |
| Visa Wired Plastic Cards to include # -8223 P.S., #4910 A.J. | | X |
| Visa Ultra VXCards to include #-6218 P.S., #-6090 | | X |
| White Blank Cards, numbered (10) | | X |
| Plastic laminet with magnetic strip | | X |
| Passport photos (8) | | X |
| Plastic bag containing white cards | | X |
| Capital One Platinum Visa Card to include # - 0306 S.B. | | X |

6

Inventory Listing of All Items Seized at Search Warant Sites

| Item | |
|---|---|
| AAA Member Card - # 3514 S.B. | x |
| 73 gold coins Krugerrands 1 oz. | x |
| 2 tubes of 50 gold coins 1/10 oz. | x |
| CA DL DXXX0372 - A.G.J. | x |
| CA DL DXXX2943 - S.T.B. | x |
| CA DL DXXX0214 - S.T.B. | x |
| CA DL DXXX0374 - S.T.B. | x |
| CA DL DXXX5936 - S.M.E. | x |
| CA DL DXXX5192 - C.O.B. | x |
| CA DL DXXX3902 - D.C.A. | x |
| CA DL BXXX0809 - K.J.S. | x |
| CA DL BXXX7110 - A.S.B. | x |
| CA DL BXXX4099 - S.J.C. | x |
| CA DL PXXX3235 - M.S.L. | x |
| IA ID XXXXX9534 S.R.E. | x |
| UC Davis Student ID XXXXX0044 C.W. | x |
| Student Access Card - Los Rios Community District - S.B. | x |
| Vista Community College Student ID - A.J. | x |
| The Body Shop Card - D.A. | x |
| CA DL Partial Liscense | x |
| Death Certificate - S.T.B. | x |
| Death Certificate - A.G.J. | x |
| ID Press 7 Cutter (2) | x |
| Plastic laminets with magnetic strips | x |

7

Inventory Listing of All Items Seized at Search Warant Sites

| Item | | |
|---|---|---|
| Portable Hard Drive | X | |
| Hand written and typed correspondence, letters/correspondence to S.B. | X | |
| Financial Documents - S.B. | X | |
| Domocilio Rental Documents | X | |
| Correspondence - A.J. | | |
| Club documents, gold pin, small black notebook (blue folder) | X | |
| Pictures | X | |
| DVD - National Database of U.S. Addresses | | X |
| Correspondence from Employment Development Department | | X |
| UPS Package dated 8/5/08 from APMEX - 2 1 0z. Gold coins | | X |
| UPS Package dated 8/4/08 from APMEX 2 1 oz gold coins | | X |
| package from Efulfillment Service - EDIC Mini digital voice recorder | | X |

8

**Attachment 4**

**Data Deletion Stipulation**

**(Stipulation Re Forensic Copies of Digital Evidence)**

1   JOHN S. LEONARDO
    United States Attorney
2   District of Arizona

3   FREDERICK A. BATTISTA
    Assistant U.S. Attorney
4   Maryland State Bar Member
    Two Renaissance Square
5   40 N. Central Ave., Suite 1200
    Phoenix, Arizona  85004
6   Telephone: 602-514-7500
    Email: fred.battista@usdoj.gov
7   Attorney for Plaintiff

8

                    IN THE UNITED STATES DISTRICT COURT
9
                          FOR THE DISTRICT OF ARIZONA
10

11   United States of America,                CR-08-814-001-PHX-DGC

12                    Plaintiff,
                                        STIPULATION RE FORENSIC COPIES
13            vs.                              OF DIGITAL EVIDENCE

14   Daniel David Rigmaiden,

15                    Defendant.

16

17          The United States of America, by and through undersigned counsel, and defendant,

18   DANIEL DAVID RIGMAIDEN, Pro Se, hereby stipulate and agree as follows:

19          1.     On August 3 and 4, 2008, federal law enforcement officers seized the

20   following digital devices (collectively, the "Original Digital Devices") from 431 El

21   Camino Real, Apartment 1122, Santa Clara, California 95050, and Storage Unit No. A-47,

22   CDB Indoor Mini Self-Storage, 570 Cinnabar Street, San Jose, California 95110, while

23   executing federal search warrants in the course of the investigation of this case:

24          a.     IBM ThinkPad laptop (SN LV-C4398) containing Hitachi 100GB hard

25   disk drive (S/N MPCZN7Y0J7N51L),

26          b.     External hard drive enclosure containing Seagate 500GB hard drive

27   (SN 3PM07D08),

28          c.     External hard drive enclosure containing Toshiba 100GB hard drive

1    (SN 36901970S),

2         d.    Acer MS2180 laptop (SN LXAA6050876090F641KS00) containing

3    Samsung 40GB hard disk drive (S/N S03WJ30L218364),

4         e.    External hard drive enclosure containing Toshiba 100GB hard drive

5    (SN 36901974S).

6         f.    Dane-Elec Blue 1GB Thumbdrive,

7         g.    SanDisk 2GB Compact Flash Ultra II Memory Card,

8         h.    Seagate 250GB Hard Drive (S/N 5QE1W2CP),

9         i.    SanDisk TransFlash 64MB Memory Card,

10        j.    Sony CyberShot Camera (S/N 506621), and

11        k.    Sony Memory Stick Pro Duo Memory Card.

12   Note for items f-k, no evidence was collected by the United States and all forensic images

13   have been deleted.

14        2.    Thereafter, the government made complete duplicates of the Original Digital

15   Devices listed in ¶ Nos. 1(a) - 1(e) above. The files contained within the duplicates are

16   exact and accurate copies of the files contained on the Original Digital Devices at the time

17   they came into the government's possession. Other than for the Master File Tables

18   contained on the Original Digital Device named "filesalot.dcv," the file system metadata

19   (*e.g.*, "file last access dates") were exact and accurate copies of the file system metadata

20   contained on the Original Digital Devices prior to the materials coming into the

21   government's possession.    However, for the Original Digital Device named

22   "filesalot.dcv," the "file last access date" file system metadata corresponding to an

23   unconfirmed number of files were changed on August 3-4, 2008, as a result of the

24   government using WinRAR and MD5Summer to access and copy the noted files via direct

25   access to the Original Digital Device file system.   Consequently, the government's

26   duplicates of the "filesalot.dcv" contain an unconfirmed number of files with "file last

27   access date" file system metadata reflecting the dates/times the government accessed the

28   files on the Original Digital Device after defendant was arrested and in custody. While the

- 2 -

1    duplicates of "filesalot.dcv" have an unconfirmed number of files with "file last access

2    date" file system metadata reflecting the dates/times the government accessed the file

3    system on the Original Digital Device, all of the files from "filesalot.dcv" that the

4    government is keeping as Necessary Digital Evidence are confirmed to have "file last

5    access date" file system metadata reflecting the dates/times the government accessed the

6    files on the Original Digital Device after defendant was arrested and in custody.

7            3.     After the creation of the duplicates, the government identified digital data the

8    government believed was necessary to prosecute defendant.  The government isolated and

9    copied the necessary data from its duplicates (collectively, the "Necessary Digital

10   Evidence").  Copies of the Necessary Digital Evidence have been provided to defendant in

11   discovery in this case. After providing the Necessary Digital Evidence in discovery, the

12   government saved (1) the Necessary Digital Evidence, and (2) all computer forensic

13   reports and associated files of which the government wishes to keep,[1] into a DriveCrypt

14   encrypted container file named "Digital_Evidence.dcv" having the following SHA-256

15   hash digest value:[2]

16          ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016

17   (hereafter the "Necessary Digital Evidence Container File").  To prevent questions or later

---

[1] The noted forensic reports and associated files resulted from the government's use of EnCase and/or other computer forensic software while examining the duplicates of the Original Digital Devices.

[2] SHA-256, as well as SHA-1, SHA-224, SHA-384, SHA512, SHA-512/224 and SHA-512/256, are all "iterative, one-way hash functions that can process a message to produce a condensed representation called a message digest.  These algorithms enable the determination of a message's integrity: any change to the message will, with a very high probability, result in a different message digest."  National Institute of Standards and Technology, FIPS PUB 180-4, *Federal Information Processing Standards Publication: Secure Hash Standard (SHS)* (Mar. 2012), p. 3.  In this case, the "message" is the totality of the Necessary Digital Evidence Container File.  The resulting "message digest" will change if files are added to or removed from the Necessary Digital Evidence Container File—thus, making changes detectable.

- 3 -

1   disputes regarding what constitutes Necessary Digital Evidence, the government provided

2   defendant with an exact copy of the Necessary Digital Evidence Container File having

3   SHA-256 hash digest value:

4         ce57150435f62cfb0d72b08a869e31f2cccce153229cc15efc394aa4e25c7d016.

5   This stipulation does not establish that the Necessary Digital Evidence is data falling

6   within the scope of any warrant executed by the government in this case.

7        4.    Defendant has requested that the government destroy the data on the Original

8   Digital Devices and on the duplicates using the process described in ¶ No. 5 below.  The

9   originals and duplicates include (1) all data on all copied Original Digital Devices, (2) all

10   forensic images of Original Digital Devices, (3) WinRAR archive(s) made during live

11   acquisitions of data contained on Original Digital Devices, (4) the three virtual machine

12   clones of the entire computer system (which are themselves complete copies of all

13   Original Digital Devices) which are now all in the possession of IRS-CI (one having been

14   returned to IRS-CI by the FBI), (5) originals and duplicates of all DriveCrypt encrypted

15   container files including:

16        i.     filesalot.dcv;

17        ii.    filesalot_bak_3-31-2008.dcv;

18        iii.   filesalot_bak_3-1-2008.dcv;

19        iv.   filesdone60_1.dcv;

20        v.    filesdone60_2.dcv; and

21        vi.   T_drive.rar

22   which originated from the Original Digital Devices, (6) all MD5 or other hash digests

23   (*i.e.*, the digital fingerprints recorded on August 3-4, 2008 and possibly on other dates)

24   taken of files on Original Digital Devices and duplicates, (7) all evidence cache files,

25   automatic backup files, case files, reports, case databases, backup files, temporary file

26   folders, and Analysis Reports resulting from government use of EnCase, AccessData FTK,

27   and/or other computer forensic software—as well as all other residual data resulting from

28   any forensic analysis—other than what is saved into the Necessary Digital Evidence

1  Container File having SHA-256 hash digest value:

2          ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016,

3  and (8) all other copies of data originating or created from Original Digital Devices which

4  are not copies of data contained within the Necessary Digital Evidence Container File

5  having SHA-256 hash digest value:

6          ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016.

7          5.    While destroying data on the Original Digital Devices and on the duplicates,

8  defendant requests that the government use a secure drive wipe process consisting of (1)

9  writing each bit of data on each relevant hard drive three (3) times with random bits of

10  data, *i.e.*, data not merely consisting of zeros, (2) overwriting the file and folder properties

11  (name, dates, size, *etc.* saved within the file system metadata) corresponding to deleted

12  files, and (3) reformatting the drives so as to erase the Master File Tables (MFTs), File

13  Allocation Tables ("FATs"), or equivalent metadata repositories corresponding to the

14  applicable file system.  After the destruction/returning process, if additional seized data

15  not consisting of data contained within the Necessary Digital Evidence Container File is

16  located on any storage device in the government's possession by a case agent, prosecutor,

17  or other government actor involved in CR08-814-PHX-DGC, defendant requests that the

18  data be deleted or destroyed without documenting the data in government records or

19  sharing the data to be destroyed with any other agent, agency, or entity within the

20  government, with any other jurisdiction, or with any private party, and that defendant be

21  notified of its deletion or destruction of the located data.

22          6.    Once the data contained on the Original Digital Devices and on the duplicates

23  are destroyed, defendant requests that the government personnel who conducted the

24  destruction process issue a signed report to defendant detailing the destruction process that

25  occurred. The report will include (1) a list of all Original Digital Devices and duplicates

26  that were subject to the data deletion process described in ¶ No. 5 above, (2) an

27  accounting of how the data contained on Original Digital Devices and duplicates was

28  destroyed, (3) an indication that all data contained on the eight (8) categories of Original

1  Digital Devices and on the duplicates listed in ¶ No. 4 above were destroyed, (4) an

2  indication that, to the best of the government's knowledge, the only copied data currently

3  in its possession consists of the Necessary Digital Evidence saved within the Necessary

4  Digital Evidence Container File having SHA-256 hash digest value:

5       ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016,

6  and (5) an indication that no data within the destroyed data, i.e., data not contained in the

7  Necessary Digital Evidence Container File having SHA-256 hash digest value:

8       ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016,

9  was previously physically shared with any other agent, agency, or entity within the

10  government, with any other jurisdiction, or with any private party.

11       7.    Acting in accordance with defendant's requests contained in ¶ Nos. 4-6

12  above, the government will (1) destroy the data contained on the Original Digital Devices

13  and on the duplicates, (2) create the requested report, and (3) make the requested

14  notifications.  In exchange for acting in accordance with defendant's requests contained in

15  ¶ Nos. 4-6 above, and upon the condition that no destroyed data was previously

16  physically shared with any other agent, agency, or entity within the government or with

17  any other jurisdiction, defendant stipulates and agrees that the Necessary Digital

18  Evidence Container File having SHA-256 hash digest value:

19       ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016

20  contains (1) digital files being true, exact, and accurate copies of the digital files found on

21  the Original Digital Devices as they existed prior to them coming into the government's

22  possession, and (2) true, exact, and accurate copies of digital file metadata contained on

23  all Original Digital Devices as they existed prior to them coming into the government's

24  possession – except for the Master File Table "file last access dates" corresponding to

25  files accessed by the government via accessing the Original Digital Device named

26  "filesalot.dcv" on August 3-4, 2008, prior to duplicating the device using reliable

27  methods.  *See* ¶ No. 2, *supra*.  The government stipulates that no data within the

28  destroyed data, *i.e.*, data *not* contained in the Necessary Digital Evidence Container File

1   having SHA-256 hash digest value:

2        ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016,

3   was previously physically shared with any other agent, agency, or entity within the

4   government, with any other jurisdiction, or with any private party.

5        8.    All Necessary Digital Evidence contained within the Necessary Digital

6   Evidence Container File having SHA-256 hash digest value:

7        ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016

8   is "admissible [into evidence] to the same extent as the original," within the meaning of

9   Fed. R. Evid. 1003.   The purpose of this stipulation is to establish an indisputable

10  foundation for the Necessary Digital Evidence contained within the Necessary Digital

11  Evidence Container File having SHA-256 hash digest value:

12       ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016.

13  Therefore, defendant and the government may still dispute whether any particular piece of

14  data is admissible in any proceeding.

15       9.    All Necessary Digital Evidence contained within the Necessary Digital

16  Evidence Container File having SHA-256 hash digest value:

17       ce57150435f62cfb0d72b08a869e31f2ccce153229cc15efc394aa4e25c7d016

18  may be admitted into evidence instead of the original material on the Original Digital

19  Devices only in legal proceedings where the Original Digital Devices or their contents

20  would be admissible.   For example, if any of the Necessary Digital Evidence is ever

21  suppressed based on a Constitutional violation, the government may not rely upon this

22  stipulation to admit the suppressed Necessary Digital Evidence in a criminal trial where

23  Daniel Rigmaiden is the defendant. Apart from the admissibility of the Necessary Digital

24  Evidence, this stipulation itself and the facts agreed to herein may not be used to establish

25  a fact in any proceeding that would otherwise require inadmissible evidence in order to be

26  established.   For example, if any of the Necessary Digital Evidence is ever suppressed

27  based on a Constitutional violation, the government may not rely upon this stipulation

28  itself, or the facts contained herein, as a substitute for the suppressed evidence in a

1  criminal trial where Daniel Rigmaiden is the defendant.

2       10.  After the defendant has been sentenced in this case, his conviction has

3  become final and the time for the defendant to file an appeal of the final judgment has

4  expired, Internal Revenue Service – Criminal Investigations (IRS-CI) will then store all

5  digital copies of the Necessary Digital Evidence.   IRS-CI will then maintain the

6  Necessary Digital Evidence in this manner for a period of 13 months.   After that time

7  period, the Necessary Digital Evidence will be destroyed by IRS-CI and defendant will be

8  notified of the destruction via a signed IRS-CI report.  If during that 13 month period the

9  government wishes to share any information contained in the Necessary Digital Evidence

10  with another agency or entity within the government, with any other jurisdiction, or with

11  any private party, the government will notify the defendant and give him an opportunity

12  to file an objection with the Court prior to any such sharing.   The parties agree that,

13  should the defendant file such an objection, the district court's resolution of the objection

14  will be final and that neither party will have the right to appeal such resolution.

15       Respectfully submitted this **20ᵗʰ** day of **February**, 2014.

16

17                                    JOHN S. LEONARDO
                                      United States Attorney
18                                    District of Arizona

19
     **February 20, 2014**
20   Date                             FREDERICK A. BATTISTA
                                      Assistant U.S. Attorney
21

22

23   **January 27, 2014**
     Date                             DANIEL D. RIGMAIDEN
24                                    Defendant

25

26

27

28

                                   - 8 -

**Attachment 5**

**Letter to the U.S. Attorney Authorizing this Agreement**



**U.S. Department of Justice**

Criminal Division

_Assistant Attorney General_                    _Washington, D.C. 20530_

MAR 2 6 2014

The Honorable John S. Leonardo
United States Attorney
District of Arizona
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, AZ 85004-4408

Attention:     Fred Battista
               Assistant United States Attorney

        Re:    Global Plea Agreement for Daniel Rigmaiden

Dear Mr. Leonardo:

        This letter is in response to your request for authorization to enter into a global plea agreement with defendant Daniel Rigmaiden.

        I hereby approve the terms of the Plea Agreement, including the provisions in paragraph 4 through which the United States agrees not to initiate further criminal proceedings against Rigmaiden for the conduct at issue, with the exceptions and conditions noted within that paragraph and elsewhere within the Plea Agreement.

        You are authorized to make this approval a matter of record in this proceeding.

                              Sincerely,

                              David A. O'Neil
                              Acting Assistant Attorney General

                              PAUL M O'BRIEN
                              DEPUTY ASSISTANT ATTORNEY GENERAL
                              CRIMINAL DIVISION