Daniel David Rigmaiden
530 E McDowell Rd
Ste 107-214
Phoenix, AZ 85004

Daniel David Rigmaiden
Pro Se, Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br>Daniel David Rigmaiden, et al.,<br><br>            Defendant. | No. CR08-814-PHX-DGC<br><br>DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE<br><br>[Expedited Processing Requested] |

Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Defendant's Motion For Early Termination of Supervised Release*.  The defendant brings this motion pursuant to Fed. R. Crim. P. 32.1(c) and 18 U.S.C. § 3583(e)(1) stating that the Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]"  *Id*. (emphasis added).  The defendant was sentenced to three years of supervised release on April 7, 2014.  *See* Dkt. #1136, *Judgment in a Criminal Case*.  The defendant has served more than one year of supervised release and has approximately 15 months remaining of which he respectfully requests the Court terminate early.

After reviewing this motion, the prosecution advised the defendant that the United States, through Assistant U.S. Attorney Frederick A. Battista, leaves this matter to the

discretion of the Court.

### I. The defendant is requesting to have his supervision terminated early because it prevents him from securing a safe and respectable place to live.

The defendant is seeking to have his supervision terminated early because he is being refused an apartment by a rental agency in the Phoenix area on the sole basis that he remains under supervision by the U.S. Probation Office. The apartment complex is in the process of renovating multiple units and the defendant estimates the remainder will be aggressively advertised during the second half of January 2016.[1] Therefore, the defendant respectfully requests expedited processing of this motion so that he may have time to rent a unit before they are all filled.

#### A. Convicted felons face great troubles when attempting to rent housing in and around Phoenix, Arizona.

Through the process of looking for apartments to rent in and around Phoenix, the defendant has learned of three general "tests" that rental agencies apply when determining whether to rent to someone with a felony conviction. The three tests are summarized below:

1. The first test is whether the person seeking to rent an apartment has had any felony conviction at all. If there is a felony conviction, the applicant is immediately disqualified. No opportunity to prove one's rehabilitation or worth is offered. The nature of the felony conviction is not considered. Someone convicted of murder is disqualified just the same as someone convicted of fraud. A one-day-old conviction is treated the same as a 50-year-old conviction.

2. The second test is whether the person seeking to rent an apartment has had a felony conviction within the last 7 years. If the felony conviction is older than 7 years, the applicant will not be immediately disqualified from renting an apartment. However, some

---

1. Should this motion be decided after the noted apartment complex is filled, the defendant still seeks to have his supervision terminated early considering the issue of being denied housing due to being on "probation" is a recurring theme.

1  rental agencies will still disqualify the applicant if the 7-year-old conviction is for a "violent
2  felony," as it is understood under federal sentencing law. *See* U.S.S.G. § 4B1.2 (2015).
3      3.  The third test is whether the person seeking to rent an apartment is currently on
4  "probation" for a felony conviction, regardless of the age of the conviction. Under this test,
5  the mere fact of a felony conviction is not dispositive of whether the applicant will be
6  disqualified. After having researched more than 50 apartment complexes in and around
7  Phoenix since his release, the defendant has encountered this test on only three occasions. In
8  all three occasions, the test requires that the conviction not be for a crime of violence.

**B.  How the three tests have been applied to the defendant.**

The vast majority of apartment complexes in and around Phoenix of which the defendant considers "safe"[2] and "respectable"[3] apply the first test and otherwise refuse to rent to the defendant.

A smaller number of safe and respectable apartment complexes apply the second test (*i.e.*, the 7-year-rule) and otherwise refuse to rent to the defendant. While the defendant's *arrest* occurred in August 2008 (*i.e.*, more than seven years ago), his *conviction* remains too new under the 7-year-rule.

An even smallest number of safe and respectable apartment complexes apply the third test, which the defendant also fails considering he remains on "probation," also known as supervised release.

Because the defendant is unable to pass any of the three tests, he currently lives in a rental that applies no test at all. This rental is neither safe nor respectable if applying societal standards. For example, since living on the property there was a murder[4] and at least two

---

2.  By "safe," the defendant generally means living on a property where crimes such as murder and home invasions do not occur, and in a neighborhood where it is relatively safe to walk around at night.

3.  By "respectable," the defendant means a residence that can generally accommodate an occasional guest. More specifically, a residence where the roof does not leak, there are no bug or rodent infestations, bathroom doors close, appliances work, there is no mold, and there are no holes or cracks in the walls that pass to the exterior.

4.  *See* EXHIBIT 01 (SpotCrime.com report of Assault/Homicide which occurred on the

home invasions.  The home invasions and murder occurred in a unit two doors down from the defendant.  Management later insinuated that these crimes were related to drug deals that were occurring at the unit.[5]

It is unfortunate that many people in the U.S. have to live under similar conditions and have no *easy* way out (irrespective of whether they have felony convictions).  However, the United States is a capitalist society consisting of winners and losers.  Those on the bottom who work hard and advance upward are rewarded.  Applying this theory, the defendant started a successful business[6] and has increased his income to a level where he no longer needs to live an impoverished, high crime area.  In all fairness, the defendant's success entitles him to the safe and respectable home life he currently lacks.  To not be rewarded in this manner means a failure of the capitalist model of which the defendant is participating.

As explained above, the sole reason the defendant is unable to rent a safe and respectable residence is because he is on supervised release.  Granted, the defendant will never be able to live in a *nice* apartment considering those properties use the first test to screen applicants.  To this effect, convicted felons are punished for life.  The defendant accepts this.

However, society still applies two lesser tests in the context of not-so-nice apartment complexes which can also be safe and respectable.  The defendant is financially qualified to rent an apartment three times what he currently pays.  However, his only chance of living in a safe and respectable, albeit not-so-nice, apartment within the next 5 years[7][8] is if he can

---

property of which defendant lives, and photograph of street corner memorial for homicide victim.).

5.   The defendant has never been questioned by law enforcement regarding any of the crimes occurring on the property.  Furthermore, no crimes have occurred at the defendant's specific unit address, and the defendant generally avoids all contact with people living on the overall property.  The defendant is not involved in drug dealing, home invasion, or murder and was not aware of any of these occurrences prior to being informed by management after-the-fact.

6.   *See infra*.

7.   Within approximately 5 years, the defendant's felony conviction will be 7 years old and he will qualify to live in apartment complexes that apply the second test noted in this motion.

8.   The 7-year-rule—seemingly based on the pre-CRCA version of the FCRA (*see*

pass the third test applied by a minority of rental agencies. That is, the defendant needs to be off "probation," also known as supervised release.

## II. Termination of supervision is warranted by the conduct of the defendant and is in the interest of justice.

Section I, *supra*, may not be entirely relevant to the factors the Court may consider while deciding this motion. Therefore, in the spirit of the lawyer, the defendant presents the following facts for consideration, all of which can be confirmed by the Court via the United States Probation Office and/or via the attached exhibits:

1. The defendant has no restitution to pay. *See* Dkt. #1136, *Judgment in a Criminal Case*, p. 1 ("The defendant shall pay to the Clerk the following total criminal monetary penalties: [] RESTITUTION: $0"). To the effect that being on supervised release facilitates one's continual payment of restitution, it is not served in this case.

2. The defendant has paid the $400.00 special assessment ordered by the Court as part of his sentence.

3. The defendant has been filing his tax returns and paying necessary taxes to the IRS, which was ordered by the Court as part of his sentence. The defendant filed his 2014 tax return and recently made an advance payment to the IRS for taxes that will soon be due in relation to his business that began operation in the fourth quarter of 2015.

4. The defendant has completed the 100 hours of community service ordered by the Court as part of his sentence. For example, the defendant completed at least 20 hours and 50 minutes as an intern with the American Civil Liberties Union of Northern California

---

https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-nadell-12-10-98)—was "adopted" by rental agencies in the zeitgeist of an arrest followed by a relatively swift conviction, *e.g.*, within a few months. *See* Bureau of Justice Statistics. (1992). *State Court Sentencing of Convicted Felons*, p. 42, *available at* http://www.bjs.gov/content/pub/pdf/NJRP924.PDF (last accessed: Jan. 4, 2016) [PDF p. 2] ("Mean elapsed time from arrest to sentencing in 1992 was nearly **7 months**, unchanged from 1988; the median was nearly **5 months**, also unchanged (table 4.11)." (emphasis added)). Even today, few spend 68 months in custody *before* being convicted, as was the case with the defendant. It is that pretrial custody time that prevents him from qualifying to rent under the 7-year-rule.

("ACLUNC"), at least 79 hours and 20 minutes as a volunteer with a local food and clothing bank, and at least 22 hours and 50 minutes contributing to the "Stingray phone tracker" Wikipedia page supported by the Wikimedia Foundation.[9][10]  As an intern with the ACLUNC, the defendant assisted Senior Staff Attorney Linda Lye with her tutorial titled, *STINGRAYS: The Most Common Surveillance Tool the Government Won't Tell You About.*, *available at* https://www.aclunc.org/sites/default/files/StingRays_The_Most_Common_Surveillance_Tool_the_Govt_Won%27t_Tell_You_About_0.pdf (last accessed: Jan. 4, 2016).  *See also* EXHIBIT 02 (title page and table of contents).  "The purpose of th[e] paper is to provide criminal defense attorneys with a basic introduction to StingRays, allowing them to assess whether the devices may have been used in their cases and to outline potential arguments for a motion to suppress."  *Id*.

5. Since his release, the defendant has been advising and assisting lawyers, journalists, and policy makers on cellular surveillance.  In doing so, the defendant is both participating in and making a positive impact on society.  Prior to his arrest, the defendant chose not to participate in society as a normal user.  The defendant's decision to opt out in this manner was the basis of his criminal activity.  In contrast, the defendant is now actively participating in society as designed, setting and achieving goals as a normal user of the system.  Under the circumstances, this participation "reduces the risk to the public from further crimes of the defendant[,]" which is an issue the Court can consider when deciding a motion for early termination.  U.S.S.G. § 5D1.2, App. Note. 5 (2015) (*Early Termination and Extension*).  Highlights of the defendant's positive impact on society are summarized below:

---

9. Due to the grassroots nature of the Wikipedia volunteer network, the defendant's volunteer work was unsupervised and the time cannot necessarily be verified.  However, all of the defendant's contributions for Wikipedia are logged under "ddrigmaiden" at https://en.wikipedia.org/w/index.php?title=Stingray_phone_tracker&action=history (last accessed: Jan. 4, 2016).

10. The 20+ hours the defendant spent working on HB 1440 with the American Civil Liberties Union of Washington State, and 30+ hours preparing and delivering a 67-slide presentation on StingRays at the Arizona Attorneys for Criminal Justice 2015 Winter Seminar also adds to the defendant's community service time.  *See infra*.

        a.    On January 8, 2015, the defendant gave a presentation on cell site simulators to defense attorneys at the 2015 Arizona Attorneys for Criminal Justice Winter Seminar.  *See* EXHIBIT 03 (AACJ 2015 Winter Seminar Agenda).  The defendant spent at least 30 hours preparing 67 detailed slides and gave a 60 minute talk followed by questions.

        b.    Beginning January 2015 and concluding March 2015, the defendant worked with the American Civil Liberties Union of Washington State ("ACLUWA") on StingRay oversight legislation.  *See* Martin, Kate. (Mar. 23, 2015). *Stingray snared him, now he helps write rules for surveillance device*, The News Tribune, *available at* http://www.thenewstribune.com/news/local/politics-government/article26270491.html (last accessed: Jan. 4, 2016) [EXHIBIT 04].  The Washington State bill, HB 1440, "[p]rohibit[s] the use of a cell site simulator device without a warrant."[11]  The final version of the bill received full bipartisan support in both the House and Senate, no objection from the law enforcement lobby, and was signed into law on May 11, 2015.  Working on the bill, the defendant was able to reword the definition of "cell site simulator" to include the full range of surveillance techniques facilitated by the technology.

        c.    Since his release, the defendant has assisted both television and print journalists on stories addressing StingRay and other cell phone surveillance.  The defendant provides this service regardless of whether a given journalist is seeking to quote the defendant.  In doing so, the defendant strives for accurate fact checking on government surveillance narratives from a neutral position.  *See, e.g.*, Ubaid, Mir. (Oct. 14, 2015). *Can You Hear Me Now? How Police Track Your Cellphone*. Tom's Guide, http://www.tomsguide.com/us/cellphone-tracker-stingray,news-21718.html (last accessed: Jan. 4, 2016) (quoting the defendant's technical explanations).  The defendant also assists journalists by assembling public records on emerging surveillance technology for use in their reporting.  *See, e.g.*, Valentino-DeVries, Jennifer. (Aug. 19, 2015). *Police Snap Up Cheap Cellphone Trackers*. The wall Street Journal, *available at*

---

11.    WA State, HB 1440 - 2015-16, *Prohibiting the use of a cell site simulator device without a warrant*, http://app.leg.wa.gov/billinfo/summary.aspx?bill=1440 (last accessed: Jan. 4, 2016).

http://www.wsj.com/article_email/police-snap-up-cheap-cellphone-trackers-1439933271-lMyQjAxMTI1MDE1ODkxMjgzWj (last accessed: Jan. 4, 2016) ("'Everyone is really behind the curve on this,' said Daniel Rigmaiden, a civil-liberties advocate who provided initial public documents to the Journal and has been following such legislation.").

      6.    In fourth quarter 2015, the defendant started a computer programming service business. Through his business, the defendant has created and filled one job (his own). In two months, the defendant doubled his salary from his previous job and is on track to triple that salary in first quarter 2016. Having a successful business and being financially stable reduces the defendant's risk of recidivism.

* * *

An article by the United States Courts summarizing a federal Judiciary study states that "[e]arly-term offenders save the probation and pretrial services system time when officers are no longer required to supervise them. **Offenders receive early release from supervision an average of 15.7 months before their scheduled supervision term is set to expire**." United States Courts. (Sept. 24, 2013). *Early Termination of Supervision Cost-Effective and Safe*, http://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe (last accessed: Jan 4, 2016) (emphasis added). As of the date of this motion, the defendant has approximately 15 months of supervision remaining. By terminating the defendant's supervision early, the district will be able to "devote more resources to supervising and servicing offenders who are a greater risk to society." *Id*.

Additionally, if this motion is not granted, the defendant will likely have to wait 15 more months for his supervised release to naturally expire before he will be qualified to rent a safe and respectable residence.

* * * * *

This motion was drafted by Daniel Rigmaiden, the *pro se* defendant. However, he authorizes Philip Seplow, his shadow counsel, to file this motion on his behalf using the ECF system.

///

Respectfully Submitted: January 8, 2016

        PHILIP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

        s/ Philip Seplow
        Philip Seplow
        Shadow Counsel for Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2016, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; *See* ECF Proc. I(D) and II(D)(3))